## LEEDOM et al., MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD, v. KYNE.

No. 14.   Argued October 23, 1958.—Decided December 15, 1958.

*Norton J. Come* argued the cause for petitioners.   With him on the brief were *Solicitor General Rankin, Jerome D. Fenton, Thomas J. McDermott* and *Dominick Manoli.*

*Jonas Silver* argued the cause for respondent, *pro hac vice,* by special leave of Court.   With him on the brief was *Bernard Dunau.*

Briefs of *amici curiae* urging affirmance were filed by *Milton F. Lunch* for the National Society of Professional Engineers, and *Gerard D. Reilly* and *Joseph C. Wells* for the Engineers Joint Council.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Section 9 (b)(1) of the National Labor Relations Act, 49 Stat. 453, 61 Stat. 143, 29 U. S. C. § 159 (b)(1),

provides that, in determining the unit appropriate for collective bargaining purposes, "the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." The Board, after refusing to take a vote among the professional employees to determine whether a majority of them would "vote for inclusion in such unit," included both professional and nonprofessional employees in the bargaining unit that it found appropriate. The sole and narrow question presented is whether a Federal District Court has jurisdiction of an original suit to vacate that determination of the Board because made in excess of its powers.

The facts are undisputed. Buffalo Section, Westinghouse Engineers Association, Engineers and Scientists of America, a voluntary unincorporated labor organization, hereafter called the Association, was created for the purpose of promoting the economic and professional status of the nonsupervisory professional employees of Westinghouse Electric Corporation at its plant in Cheektowaga, New York, through collective bargaining with their employer. In October 1955, the Association petitioned the National Labor Relations Board for certification as the exclusive collective bargaining agent of all nonsupervisory professional employees, being then 233 in number, of the Westinghouse Company at its Cheektowaga plant, pursuant to the provisions of § 9 of the Act, 29 U. S. C. § 159. A hearing was held by the Board upon that petition. A competing labor organization was permitted by the Board to intervene. It asked the Board to expand the unit to include employees in five other categories who performed technical work and were thought by it to be "professional employees" within the meaning of § 2 (12) of the Act, 29 U. S. C. § 152 (12). The Board found that

they were not professional employees within the meaning of the Act. However, it found that nine employees in three of those categories should nevertheless be included in the unit because they "share a close community of employment interests with [the professional employees, and their inclusion would not] destroy the predominantly professional character of such a unit." The Board, after denying the Association's request to take a vote among the professional employees to determine whether a majority of them favored "inclusion in such unit," included the 233 professional employees and the nine nonprofessional employees in the unit and directed an election to determine whether they desired to be represented by the Association, by the other labor organization, or by neither. The Association moved the Board to stay the election and to amend its decision by excluding the nonprofessional employees from the unit. The Board denied that motion and went ahead with the election at which the Association received a majority of the valid votes cast and was thereafter certified by the Board as the collective bargaining agent for the unit.

Thereafter respondent, individually, and as president of the Association, brought this suit in the District Court against the members of the Board, alleging the foregoing facts and asserting that the Board had exceeded its statutory power in including the professional employees, without their consent, in a unit with nonprofessional employees in violation of § 9 (b)(1) which commands that the Board "shall not" do so, and praying, among other things, that the Board's action be set aside. The defendants, members of the Board, moved to dismiss for want of jurisdiction and, in the alternative, for a summary judgment. The plaintiff also moved for summary judgment. The trial court found that the Board had disobeyed the express command of § 9 (b)(1) in including nonprofessional employees and professional employees in

the same unit without the latter's consent, and in doing so had acted in excess of its powers to the injury of the professional employees, and that the court had jurisdiction to grant the relief prayed. It accordingly denied the Board's motion and granted the plaintiff's motion and entered judgment setting aside the Board's determination of the bargaining unit and also the election and the Board's certification.

On the Board's appeal it did not contest the trial court's conclusion that the Board, in commingling professional with nonprofessional employees in the unit, had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees. Instead, it contended only that the District Court lacked jurisdiction to entertain the suit. The Court of Appeals held that the District Court did have jurisdiction and affirmed its judgment. 101 App. D. C. 398, 249 F. 2d 490. Because of the importance of the question and the fact that it has been left open in our previous decisions, we granted certiorari, 355 U. S. 922.

Petitioners, members of the Board, concede here that the District Court had jurisdiction of the suit under § 24 (8) of the Judicial Code, 28 U. S. C. § 1337, unless the review provisions of the National Labor Relations Act destroyed it. In *American Federation of Labor* v. *Labor Board,* 308 U. S. 401, this Court held that a Board order in certification proceedings under § 9 is not "a final order" and therefore is not subject to judicial review except as it may be drawn in question by a petition for enforcement or review of an order, made under § 10 (c) of the Act, restraining an unfair labor practice. But the Court was at pains to point out in that case that "[t]he question [there presented was] distinct from . . . whether petitioners are precluded by the provisions of the Wagner Act from maintaining an independent suit in a district court to set aside the Board's action because

contrary to the statute . . . ." *Id.,* at 404. The Board argued there, as it does here, that the provisions of the Act, particularly § 9 (d), have foreclosed review of its action by an original suit in a District Court. This Court said: "But that question is not presented for decision by the record before us. Its answer involves a determination whether the Wagner Act, in so far as it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code. It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, *apart from the review provisions of the Wagner Act,* affords a remedy. This question can be properly and adequately considered only when it is brought to us for review upon a suitable record." *Id.,* at 412. (Emphasis added.)

The record in this case squarely presents the question found not to have been presented by the record in *American Federation of Labor* v. *Labor Board, supra.* This case, in its posture before us, involves "unlawful action of the Board [which] has inflicted an injury on the [respondent]." Does the law, "apart from the review provisions of the . . . Act," afford a remedy? We think the answer surely must be yes. This suit is not one to "review," in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act. Section 9 (b)(1) is clear and mandatory. It says that, in determining the unit appropriate for the purposes of collective bargaining, "the Board *shall not* (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional

employees vote for inclusion in such unit." (Emphasis added.) Yet the Board included in the unit employees whom it found were not professional employees, after refusing to determine whether a majority of the professional employees would "vote for inclusion in such unit." Plainly, this was an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a "right" assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given.

In *Texas & New Orleans R. Co.* v. *Railway Clerks,* 281 U. S. 548, it was contended that, because no remedy had been expressly given for redress of the congressionally created right in suit, the Act conferred "merely an abstract right which was not intended to be enforced by legal proceedings." *Id.,* at 558. This Court rejected that contention. It said: "While an affirmative declaration of duty contained in a legislative enactment may be of imperfect obligation because not enforceable in terms, a definite statutory prohibition of conduct which would thwart the declared purpose of the legislation cannot be disregarded. . . . If Congress intended that the prohibition, as thus construed, should be enforced, the courts would encounter no difficulty in fulfilling its purpose . . . . The definite prohibition which Congress inserted in the Act can not therefore be overridden in the view that Congress intended it to be ignored. As the prohibition was appropriate to the aim of Congress, and is capable of enforcement, the conclusion must be that enforcement was contemplated." *Id.,* at 568, 569. And compare *Virginian R. Co.* v. *System Federation,* 300 U. S. 515.

In *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297, this Court held that the District Court did not have jurisdiction of an original suit to review an order

of the National Mediation Board determining that all yardmen of the rail lines operated by the New York Central system constituted an appropriate bargaining unit, because the Railway Labor Board had acted within its delegated powers. But in the course of that opinion the Court announced principles that are controlling here. "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control. That was the purport of the decisions of this Court in *Texas & New Orleans R. Co.* v. *Brotherhood of Clerks,* 281 U. S. 548, and *Virginian R. Co.* v. *System Federation,* 300 U. S. 515. In those cases it was apparent that but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act. The result would have been that the 'right' of collective bargaining was unsupported by any legal sanction. That would have robbed the Act of its vitality and thwarted its purpose." *Id.,* at 300.

Here, differently from the *Switchmen's* case, "absence of jurisdiction of the federal courts" would mean "a sacrifice or obliteration of a right which Congress" has given professional employees, for there is no other means, within their control (*American Federation of Labor* v. *Labor Board, supra*), to protect and enforce that right. And "the inference [is] strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." 320 U. S., at 300. This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers. Cf. *Harmon* v. *Brucker,* 355 U. S. 579; *Stark* v. *Wickard,* 321 U. S. 288; *School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94.

Where, as here, Congress has given a "right" to the professional employees it must be held that it intended that right to be enforced, and "the courts . . . encounter no difficulty in fulfilling its purpose." *Texas & New Orleans R. Co.* v. *Railway Clerks, supra,* at 568.

The Court of Appeals was right in holding, in the circumstances of this case, that the District Court had jurisdiction of this suit, and its judgment is

*Affirmed.*

MR. JUSTICE BRENNAN, whom MR. JUSTICE FRANK-FURTER joins, dissenting.

The legislative history of the Wagner Act,[1] and of the Taft-Hartley amendments,[2] shows a considered congres-sional purpose to restrict judicial review of National Labor Relations Board representation certifications to review in the Courts of Appeals in the circumstances specified in § 9 (d), 29 U. S. C. § 159 (d). The question was extensively debated when both Acts were being considered, and on both occasions Congress concluded that, unless drastically limited, time-consuming court procedures would seriously threaten to frustrate the basic national policy of preventing industrial strife and achieving industrial peace by promoting collective bargaining.

The Congress had before it when considering the Wagner Act the concrete evidence that delays pending time-consuming judicial review could be a serious hindrance to the primary objective of the Act—bringing employers and employees together to resolve their differences through discussion. Congress was acutely aware of the experience of the predecessor of the present Labor Board [3] under the

---

[1] 49 Stat. 449.

[2] 61 Stat. 136.

[3] The first National Labor Relations Board was created by Public Resolution 44 of June 19, 1934, 48 Stat. 1183, to administer § 7 (a) of the National Industrial Recovery Act, 48 Stat. 198.

National Industrial Recovery Act, which provided that investigations and certifications by the Board could be brought directly to the courts for review. Such direct review was determined by the Congress to be "productive of a large measure of industrial strife . . . ,"[4] and was specifically eliminated in the Wagner Act. Although Congress recognized that it was necessary to determine employee representatives before collective bargaining could begin, Congress concluded that the chance for industrial peace increased correlatively to how quickly collective bargaining commenced. For this reason Congress ordained that the courts should not interfere with the prompt holding of representation elections or the commencement of collective bargaining once an employee representative has been chosen.[5] Congress knew that if direct judicial review of the Board's investigation and certification of representatives was not barred, "the Government can be delayed indefinitely before it takes the first step toward industrial peace."[6] Therefore, § 9 (d) was written to provide "for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election."[7] After the Wagner Act was passed, a proposed amendment to allow judicial review after an election but before an unfair labor practice order was specifically rejected.[8] In short, Congress set itself firmly against direct judicial review of the investigation and certification of representatives, and required the prompt initiation of the collective-bargaining process after the

[4] H. R. Rep. No. 1147, 74th Cong., 1st Sess., p. 7.

[5] See H. R. Rep. No. 1147, *supra,* p. 23.

[6] S. Rep. No. 573, 74th Cong., 1st Sess., p. 6.

[7] 79 Cong. Rec. 7658.

[8] See Hearings before Senate Committee on Education and Labor on S. 1000 et al., 76th Cong., 1st Sess., pp. 584–587.

Board's certification, because of the risk that time-consuming review might defeat the objectives of the national labor policy. See *American Federation of Labor* v. *Labor Board,* 308 U. S. 401, 409–411; *Madden* v. *Brotherhood and Union of Tr. Employees,* 147 F. 2d 439.

When the Taft-Hartley amendments were under consideration, employers complained that because § 9 (d) allowed judicial review to an employer only when unfair labor practice charges were based in whole or in part upon facts certified following an investigation of representatives, these "cumbersome proceedings" meant that the employer could have review only by committing an unfair labor practice "no matter how much in good faith he doubted the validity of the certification." [9] A House amendment therefore provided for direct review in the Courts of Appeals of Board certifications on appeal of any person interested, as from a final order of the Board.[10] Opponents revived the same arguments successfully employed in the Wagner Act debates: "Delay would be piled upon delay, during which time collective bargaining would be suspended pending determination of the status of the bargaining agent. Such delays can only result in industrial strife." [11] Both sides recognized that the House amendment would produce a fundamental change in the law.[12] The Senate rejected the House amendment; the amendments proposed by that body continued only the indirect and limited review provided

---

[9] H. R. Rep. No. 245, 80th Cong., 1st Sess., p. 43.

[10] H. R. 3020, 80th Cong., 1st Sess., § 10 (f); see H. R. Rep. No. 245, *supra,* pp. 59–60.

[11] H. R. Rep. No. 245, *supra,* p. 94 (minority report). It was conservatively estimated that one year would be the average time required for judicial review of a Board certification. *Ibid.*

[12] See, *e. g.,* H. R. Rep. No. 245, *supra,* p. 43.

in original § 9 (d). In conference, the Senate view prevailed.[13] Senator Taft reported:[14]

> "Subsection 9 (d) of the conference agreement conforms to the Senate amendment. The House bill contained a provision which would have permitted judicial review of certifications even before the entry of an unfair labor practice order. In receding on their insistence on this portion, the House yielded to the view of the Senate conferees that such provision would permit dilatory tactics in representation proceedings."

The Court today opens a gaping hole in this congressional wall against direct resort to the courts. The Court holds that a party alleging that the Board was guilty of "unlawful action" in making an investigation and certification of representatives need not await judicial review until the situation specified in § 9 (d) arises, but has a case immediately cognizable by a District Court under the "original jurisdiction" granted by 28 U. S. C. § 1337 of "any civil action or proceeding arising under any Act of Congress regulating commerce." The Court, borrowing a statement fom *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297, 300, finds that, in such case "the inference [is] strong that Congress intended the statutory provisions governing the general jurisdiction of those [District] courts to control."

There is nothing in the legislative history to indicate that the Congress intended any exception from the requirement that collective bargaining begin without awaiting judicial review of a Board certification or the investigation preceding it. Certainly nothing appears that an exception was intended where the attack upon the Board's action is based upon an alleged misinterpretation of the

[13] See H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess., pp. 56–57.
[14] 93 Cong. Rec. 6444.

statute. The policy behind the limitation of judicial review applies just as clearly when the challenge is made on this ground. Plainly direct judicial review of a Board's interpretation of the statute is as likely to be as drawn out, and thus as frustrative of the national policy, as is review of any other type of Board decision. That appears from the timetable in *Inland Empire District Council* v. *Millis,* 325 U. S. 697. That case also involved a challenge in a District Court to a statutory interpretation by the Board in a representation proceeding. The Court held that it was not necessary to reach the question of the District Court's jurisdiction since it had not been shown that the Board's interpretation of the pertinent statute was erroneous. But over two years elapsed while the question was being litigated. The hearing which led to the certification was held in May 1943 and this Court's decision was announced on June 11, 1945.

If there be error in the Board's statutory interpretation here, although there was none in *Inland Empire Council,* I ask, again, where even a scintilla of evidence is to be found that Congress intended an exception to permit direct judicial review for Board errors in statutory interpretation, obvious or debatable? Of course, there is none. Indeed the evidence to the contrary that Congress intended only limited review is so compelling that I can see no escape from the conclusion reached by the Fourth Circuit Court of Appeals: "It is hardly possible that Congress should have intended to permit review by District Courts of 9 (c) proceedings while so carefully limiting review of such proceedings in the Circuit Courts of Appeals to cases in which an order under 10 (c) has been entered." *Madden* v. *Brotherhood and Union of Tr. Employees,* 147 F. 2d 439, 442.

I daresay that the ingenuity of counsel will, after today's decision, be entirely adequate to the task of finding some alleged "unlawful action," whether in statutory

interpretation or otherwise, sufficient to get a foot in a District Court door under 28 U. S. C. § 1337. Even when the Board wins such a case on the merits, as in *Inland Empire Council,* while the case is dragging through the courts the threat will be ever present of the industrial strife sought to be averted by Congress in providing only drastically limited judicial review under § 9 (d). Both union and management will be able to use the tactic of litigation to delay the initiation of collective bargaining when it suits their purposes. A striking example of this was recently disclosed to the Select Committee of the Senate on Improper Activities in the Labor or Management Field.[15] A union, by challenging Board certification proceedings in the District Courts,[16] was able to extend a representation proceeding to over six months, even though only seven employees were involved and they did not support the union. By the time that the Board was able to certify a representative of the employees, the industrial strife of those six months had forced the employer out of business. Thus collective bargaining was prevented, the basic purpose of the LMRA was frustrated, and the result was serious hardship to both the employer and employees. I fear that today the Court fashions a major setback for the goals of the national labor policy, at least until the Congress enacts new language to express a will which I think is already crystal clear.

---

[15] See Testimony of Boyd Leedom, Chairman of the National Labor Relations Board, before the Select Committee of the Senate on Improper Activities in the Labor or Management Field, November 20, 1958.

[16] In this general connection, the Chairman of the NLRB testified: "We are experiencing now, I think, more than any time within my experience . . . a tendency of the United States District Courts to move into the area where we think we have exclusive jurisdiction, so that in recent months we have had several District Courts interfering with our election processes."

It is no support for the Court's decision that the respondent union may suffer hardship if review under 28 U. S. C. § 1337 is not open to it. The Congress was fully aware of the disadvantages and possible unfairness which could result from the limitation on judicial review enacted in § 9 (d). The House proposal for direct review of Board certifications in the Taft-Hartley amendments was based in part upon the fact that, under the Wagner Act, the operation of § 9 (d) was "unfair to . . . the union that loses, which has no appeal at all no matter how wrong the certification may be; [and to] the employees, who also have no appeal . . . ." [17] Congress nevertheless continued the limited judicial review provided by § 9 (d) because Congress believed the disadvantages of broader review to be more serious than the difficulties which limited review posed for the parties. Furthermore, Congress felt that the Board procedures and the limited review provided in § 9 (d) were adequate to protect the parties. [18]

The Court supports its decision by stating that *Switchmen's Union* v. *National Mediation Board, supra,* "announced principles that are controlling here." This is true, but I believe that those principles lead to, indeed compel, a result contrary to that reached by the Court. In that case, the Switchmen's Union sought to challenge in a District Court the certification of an employee representative by the National Mediation Board under the Railway Labor Act. The Board certified the Brotherhood of Railroad Trainmen as representative for all the yardmen of the rail lines operated by the New York Central system. The Switchmen's Union contended that yardmen of certain designated parts of the system should be permitted to vote for separate representatives instead of being compelled to take part in a system-wide elec-

---

[17] H. R. Rep. No. 245, *supra,* p. 43.

[18] See notes 19, 20, *infra.*

tion. The Board rejected this contention of the Switchmen's Union upon the ground that the Railway Labor Act did not authorize the Board to determine a unit of less than the entire system. The Board's interpretation was that the "Railway Labor Act vests the Board with no discretion to split a single carrier . . . ." *Switchmen's* case, 320 U. S., at 309. This Court held that the action of the Switchmen's Union was not cognizable in a District Court. The Court held that the Railway Labor Act, read in the light of its history, disclosed a congressional intention to bar direct review in the District Courts of certifications by the Mediation Board. This was held notwithstanding the fact that the certification was based on an alleged misinterpretation of the Act.

This same reasoning has striking application in this case. The National Labor Relations Act provides that the Labor Board "shall decide in each case . . . the unit appropriate for the purposes of collective bargaining," § 9 (b), but also provides that the Board "shall not . . . decide that any unit is appropriate . . . if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit . . . ." § 9 (b)(1). The Board, in making the certification in dispute, has interpreted these provisions as requiring the approval of the professional employees of a mixed bargaining unit of professionals and nonprofessionals only when the professionals are a minority in the unit, since only in such a case would they need this protection against the ignoring of their particular interests. This interpretation is the basis of respondent union's complaint in its action under 28 U. S. C. § 1337 in the District Court. But an alleged error in statutory construction was also the basis of the District Court action in the *Switchmen's* case. Thus the two cases are perfectly parallel. And just as surely as in the case of the Mediation Board under the

Railway Labor Act, the Congress has barred District Court review of National Labor Relations Board certifications under the Labor Management Relations Act. The history of the controversy over direct judicial review which I have canvassed shows with a clarity perhaps not even as true of the Mediation Board that the National Labor Relations Board was the "precise machinery," 320 U. S., at 301, selected by Congress for the purpose of determining a certification and that "there was to be no dragging out of the controversy into other tribunals of law." *Id.*, at 305. Congress evidenced its will definitely and emphatically "by the highly selective manner in which Congress . . . provided for judicial review of administrative orders or determinations under the Act." *Id.*, at 305. Review is confined to review in a Court of Appeals in the circumstances specified in § 9 (d).

The Court seizes upon the language in *Switchmen's,* "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." 320 U. S., at 300. But the holding in *Switchmen's* was that in creating the Mediation Board and vesting that Board with power to decide certification controversies, Congress had provided its own tribunal for protection of the "right" it created, thus precluding any basis for an inference that Congress intended the general jurisdiction of the District Courts to control. The Court found that Congress intended protection of the "right" to be confined to the Board's exercise of power conferred for the purpose. Therefore, the Court held "review by the federal district courts of the Board's determination is not necessary to preserve or protect that 'right.' Congress for reasons of its own decided upon the method for the protection of the 'right' which it created. It selected the precise ma-

chinery and fashioned the tool which it deemed suited to that end. . . . All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced." 320 U. S., at 301. The Court used the "sacrifice or obliteration" language solely to distinguish the situation where Congress created a "right" but no tribunal for its enforcement. This was the case in *Texas & New Orleans R. Co.* v. *Brotherhood of Railway Clerks,* 281 U. S. 548, and *Virginian R. Co.* v. *System Federation,* 300 U. S. 515. In the *Texas* case, the employer was attempting to prevent the organization of its employees in violation of § 2 of the Railway Labor Act, which provided that the employees could select representatives "without interference, influence, or coercion" by the employer. There was no agency designated to enforce this policy of the Act, and unless the courts provided sanctions against the outlawed activity, there would be no official sanctions to prevent it. Similarly in the *Virginian R. Co.* case, a union asked the Court to order an employer to obey the commands of the Railway Labor Act because without such relief the employer would have been free to ignore the Act, since at that time the Railway Labor Act provided no agency for enforcement of the right. Thus when the Court in *Switchmen's* talked about "the absence of jurisdiction of the federal courts" meaning "a sacrifice or obliteration of a right which Congress had created" it referred to the situations in the *Texas* and *Virginian R. Co.* cases. See *Switchmen's* case, at p. 300.

But here, as the Congress provided the Mediation Board under the Railway Labor Act, the Congress has provided an agency, the NLRB, to protect the "right" it created under the National Labor Relations Act. Congress has in addition enacted "an appropriate safeguard and opportunity to be heard" [19] in procedures to be followed by the Board. It has indeed gone further than in the

---

[19] H. R. Rep. No. 1147, *supra*, p. 23.

Railway Labor Act. Whereas no judicial review of any kind was there provided, some, although limited, judicial review is provided under § 9 (d). This was considered by Congress as "a complete guarantee against arbitrary action by the Board." [20] Plainly we have here a situation where it may be said precisely as in *Switchmen's* that "Congress for reasons of its own decided upon the method for protection of the 'right' it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end."

Cases such as *Harmon* v. *Brucker,* 355 U. S. 579, and *Stark* v. *Wickard,* 321 U. S. 288, cited by the Court, merely indicate that congressionally created rights may be judicially enforced unless the Act that creates the rights indicates the contrary. Each case must turn on an interpretation of the statute that creates the right. As this Court said in *Stark* v. *Wickard* itself: "even where a complainant possesses a claim to executive action beneficial to him, created by federal statute, it does not necessarily follow that actions of administrative officials, deemed by the owner of the right to place unlawful restrictions upon his claim, are cognizable in appropriate federal courts of first instance." 321 U. S., at 306. The statutes under consideration in those cases do not have the common purposes and scheme of the National Labor Relations Act and Railway Labor Act. Furthermore, the general statutory scheme and the legislative history of those statutes simply did not demonstrate the intent to limit the judicial enforcement of the rights created, so compellingly demonstrated in this case, and in *Switchmen's Union* v. *National Mediation Board.*

I would reverse and remand the case to the District Court with instructions to dismiss the complaint for lack of jurisdiction of the subject matter.

---

[20] S. Rep. No. 573, *supra,* p. 14.