**SURPRENANT MFG. CO.**

v.

**Bernard L. ALPERT, as Regional Director of the National Labor Relations Board for the First Region.**

Civ. A. No. 62-948.

United States District Court
D. Massachusetts.

Jan. 31, 1963.

Richard Comerford, Dyer & Comerford, Leominster, Mass., Matthew E. Murray, Chicago, Ill., for plaintiff.

Robert Greene, Boston, Mass., James C. Parras, Washington, D. C., for defendant.

WYZANSKI, District Judge.

This case is before the Court upon plaintiff's request for a mandatory injunction to compel the defendant Regional Director to open and count certain impounded ballots and to issue a tally of the results of the balloting in a representation proceeding before the Regional Director, and upon defendant's motion to dismiss the complaint, or, alternatively, for summary judgment. The undisputed facts established by the complaint and the exhibits attached thereto, as well as by the exhibits attached to the motion to dismiss, may be summarized as follows:

On October 5, 1962, the United Steelworkers of America, AFL-CIO, filed a representation petition pursuant to Section 9(c) of the National Labor Relations Act with the defendant Regional Director requesting that a representation election be held among the production and maintenance employees of plaintiff, Surprenant Manufacturing Co., at its plant in Clinton, Massachusetts. On October 22, 1962, the Communication Workers of America, AFL-CIO, and the International Molders and Allied Products Workers Union, AFL-CIO, intervened in the representation proceeding. On the same day, all parties interested in the election (plaintiff, representatives of Steelworkers, Communications Workers, and Molders and Allied Products Workers) entered into a Stipulation for a Consent Election which was subject to the approval of the Regional Director. The Stipulation waived a hearing upon the election petition, designated the appropriate collective bargaining unit, and provided for an election to be held among plaintiff's employees in its plants in Clinton, Massachusetts, on November 9, 1962. The Stipulation further provided that "Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board". On October 23, 1962, defendant Regional Director approved this Stipulation.

On November 7, two days before the scheduled election, the Steelworkers Union filed an unfair labor practice charge with the Regional Director alleging that plaintiff had engaged in conduct violative of Section 8(a) (1) of the Act. Specifically, the Union charged that the employer "has interrogated its employees, directly and/or indirectly threatened to close down its plant if the union were successful and has otherwise orally and in writing intimidated them with the object of interfering with their rights as guaranteed in Section 7 of the Act." Because the preparations for the election were then well underway, the Regional Director decided to permit the balloting to be conducted but to impound the ballots pending the investigation of the unfair labor practice charges. After investigation, the Regional Director, being of opinion that the charges had "merit" in the sense not that they were found to be true, but that they were *bona fide* and plausible, issued an Order on December 5, 1962, withdrawing his approval of the consent election agreement, declaring "the incompleted election of November 9, 1962 null and void," and ordering the destruction of the impounded ballots on December 12, 1962. This order further stated, as a basis for the foregoing actions, that the unfair labor practice "charges have since been investigated by the [Regional Director] who has reached the conclusion that they have merit and that a complaint should issue absent other satisfactory disposition of said charges". Upon plaintiff's request for reconsideration of this Order, the Regional Director postponed the destruction of the ballots until December 19, and scheduled a hearing with all the parties for December 12.

On December 20, on the basis of his investigation of the unfair labor practice charges, the Regional Director issued a complaint alleging that plaintiff, by interference, restraint and coercion of its employees in their exercise of rights guaranteed in Section 7 of the Act, had violated Section 8(a) (1) of the Act. More specifically, plaintiff was charged with threatening its employees with loss of regular and overtime work opportunities "if the Union won the election," warning them that those opposed to unionization would meet with violence in the event that the Union won, threatening to discontinue all existing benefits and "bargain from scratch" if it was forced to deal with the Union and threatening "to close the plant if the Union got in". A hearing on these charges is currently scheduled for February 19, 1963.

On December 14, 1962, plaintiff filed its complaint seeking to have this Court: (1) "restrain the defendant Alpert * * from destroying the ballots cast * * "; (2) "issue a mandatory injunction requiring the defendant Alpert to count the said ballots and announce the results of the said election * * * "; and (3) "direct the defendant Alpert to postpone the hearing upon the unfair labor practice charges * * * pending an adjudication in this proceeding as to the right of this plaintiff to have said charges consolidated with any objections which may be made to the validity of said election following the furnishing of a tally of the ballots by the defendant Alpert". The Regional Director has moved to dismiss the complaint on the grounds that: (1) the Court lacks jurisdiction over the subject matter; and (2) the complaint fails to state a claim warranting relief. Alternatively, the Regional Director has moved for summary judgment in his favor.

The threshold question is whether this Court has jurisdiction of this case.

Plaintiff alleges that jurisdiction exists under § 24(8) of the Judicial Code, 28 U.S.C. § 1337 conferring "original jurisdiction of any civil action or proceeding arising under any Act of Congress." The argument is that, in the last sentence of § 9(c) (1) of the NLR Act, Congress directed the NLRB to certify the results of an election, that impliedly Congress prohibited the NLRB from sacrificing the employer's right to know those results, and that, no other procedure being specially provided by the NLR Act, an employer, being threatened with a deprivation of that alleged right, has a right to relief in this Court. For this argument support is said to be found in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210.

The basic ground for rejecting plaintiff's argument and for concluding that this District Court is without jurisdiction of this complaint is that Congress intended that (except perhaps where an employer is deprived of a right specifically created for such employer's immediate benefit) [1] review of alleged errors of the NLRB can be had by an *employer* only after a Board order had issued to the employer, and then only in a court of appeals. The following paragraphs spell out the reasoning behind this conclusion.

The original National Labor Relations Act of 1935 did not give an employer any right to seek review in any court of any aspect of a proposed election until the NLRB issued an order and required the employer to do something predicated upon the result of an election. National Labor Relations Board v. Falk Corp., 308 U.S. 453, 459, 60 S.Ct. 307, 84 L.Ed. 396. Congress rejected numerous proposals to allow judicial review at an earlier stage. It set itself firmly against a provision for early judicial review because "such provision would permit dilatory tactics in representation proceedings." See H.R. Conf.Rep. No. 510, 80th Cong., 1st Sess. pp. 56–57, and the illuminating dissent by Brennan, J. in Leedom v. Kyne, 358 U.S.

---

1. An example might be if the NLRB arbitrarily refused to hold an election upon an *employer's* petition under § 9(c) (1) (B) of the Act, or if the NLRB arbitrarily refused to certify the results of an election held pursuant to such petition.

184, 191–201, particularly at pp. 191–195, 79 S.Ct. 180, 3 L.Ed.2d 210.

■ It is plain that Congress intended both in its original and its amended form that the NLRA should have a double effect upon employers' complaints about election procedure. If an employer filed his complaint, under the NLR Act § 10(f), in a court of appeals, that complaint could be heard only if the results of the election were the predicate of an order issued against him by the Board. National Labor Relations Board v. Falk Corp., supra; N. L. R. B. v. Shirlington Supermarket, Inc., 4th Cir., 224 F.2d 649. If an employer filed his complaint, under 28 U.S.C. § 1337 or any other statute of general jurisdiction, that complaint could not be heard because Congress had carved out an exception to that general jurisdiction by establishing a special procedure for review of an employer's complaint at an appropriate time, that is when he was hurt by an order. Atlas Life Ins. Co. v. Leedom, 109 U.S.App.D.C. 97, 284 F.2d 231.

The Kyne case does not undermine the foregoing reasoning. That was an action in a District Court under 28 U.S.C. § 1337. Plaintiff was the representative of a class of employees. Congress had expressly directed the NLRB to accord that class a specific right to participate in a particular way in an election of representatives pursuant to § 9(b) (1) of the NLR Act. The Board denied the class of employees the aforesaid right and, in effect, sacrificed or obliterated it. (Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 88 L.Ed. 61). Those employees neither at that time, or at any later time in connection with some foreseeable order, could secure review pursuant to some special provision of the NLR Act. Only if plaintiff were permitted to sue in the District Court could it effectively challenge the NLRB's denial of a right expressly conferred by Congress. The Supreme Court held that the action lay.

The situation at bar is quite different from Kyne.

■■ We start with the assumption (apparently shared by the NLRB, see its Regulations §§ 102.62 and 102.69) that when Congress in § 9(c) (1) of the NLR Act commanded the NLRB to certify the results of an election, such command was intended to govern both elections conducted after a hearing (as the subsection itself says) and elections conducted by consent when a hearing is waived. See § 9(c) (4). But if the command is disobeyed, it is important to determine whose legal interests are affected. No doubt a petitioner for an election has a legal interest in having the command obeyed. But a person who merely consents to the holding of an election, but who does not file a petition for election, who is not a voter or candidate in the election, and who is under no duty to act until the NLRB issues a certificate of representation, is not legally affected by a withdrawal of the regional director's consent to that election or by his destruction of the ballots without a tally.

Not only, unlike Kyne, the present plaintiff has no legal interest, right, or duty which is as yet affected by the proposed action of the NLRB, but also, unlike Kyne, the present plaintiff, if its legal interests, rights, or duties are hereafter affected, will have a right of action under the special statutory scheme of the NLR Act. That is, if the NLRB ever orders the present plaintiff to accept as a predicate a certification based on any election, it then, by an action in the court of appeals, pursuant to § 10(f), may secure judicial review.

Insofar as Burgess-Norton Mfg. Co. v. NLRB, 49 LRRM 2124 (N.D.Ill.) is contrary to this opinion, I decline to follow it.

Defendant's motion to dismiss the complaint is granted for want of jurisdiction in the sense that plaintiff has failed to allege invasion of any right or imposition of any duty arising under an Act of Congress. Plaintiff's motion for a preliminary injunction is denied.