CHICAGO AUTOMOBILE TRADE AS-
SOCIATION et al., Plaintiffs,

v.

Ross M. MADDEN, Regional Director of
the National Labor Relations Board,
et al., Defendants.

No. 63 C 114.

United States District Court
N. D. Illinois, E. D.
April 11, 1963.

William J. Cavers, Regional Atty., N.
L. R. B., Chicago, Ill., for defendant.

Turner, Hunt & Woolley, Chicago, Ill.,
for plaintiff.

CAMPBELL, Chief Judge.

This is an action by the Chicago Au-
tomobile Trade Association (herein re-

ferred to as the Association) and seven of its members against the Regional Director for the Thirteenth Region of the National Labor Relations Board, the Board's Chief Trial Examiner, an unnamed Trial Examiner, and three Board attorneys assigned to the Thirteenth Region. The plaintiffs seek to enjoin the defendants from proceeding with a trial *de novo* against plaintiffs in a consolidated unfair labor practice case now pending before the N.L.R.B. The plaintiffs also pray for an order directing defendant George Bokat, the Board's Chief Trial Examiner, to re-assign Trial Examiner Arthur Reyman, in concert with another Trial Examiner if necessary, to complete hearing and, alone, to prepare and issue an Intermediate Report in the cases which were recessed *sine die* by Reyman on December 12, 1962.

The defendants have moved to dismiss the complaint against them on the grounds that: (a) the Court is without jurisdiction over the subject matter of the action; (b) the complaint fails to state a claim upon which relief can be granted; and (c) plaintiffs have failed to make proper service upon defendant George Bokat, Chief Trial Examiner for the Board, who is an indispensable party to this action. In the alternative, defendants have moved that summary judgment be entered in their favor under Rule 12 (b), F.R.Civ.P.

The facts are as follows: On May 4, 1962, after investigation of unfair labor practice charges filed by two unions recently certified as bargaining agents for employees of five of the plaintiffs herein, the Regional Director issued separate complaints against each of these five employers. The complaints alleged that these employers had committed and were committing unfair labor practices. On May 4, the Regional Director issued an order directing that the consolidation of these separate cases was necessary to effectuate the policies of the National Labor Relations Act, and scheduling a consolidated hearing.

On June 13, 1962, after investigation of unfair labor practice charges filed by the two certified unions, the Regional Director issued a complaint against the Association. The complaint alleged that the Association was committing unfair labor practices by assisting and inducing some of its members (namely, the five employers against whom complaints had already issued) to refuse to bargain with the charging unions. On June 22, 1962, the Regional Director issued an order consolidating the complaint against the Association with the cases previously consolidated, and scheduled the matter for hearing. On July 30, 1962, hearing on the consolidated cases opened before Trial Examiner Reyman in Chicago. At the start of the hearing, the Trial Examiner granted the Association's motion to dismiss the complaint against it. However, on immediate appeal by the General Counsel to the Board, the Board reversed the Trial Examiner's ruling, and ordered that the complaint against the Association be reinstated and evidence heard on the allegations therein. The hearing then continued on the consolidated cases. On October 5, 1962, a complaint was issued against plaintiff Kole. On October 25, 1962, a complaint was issued against plaintiff Grill-Sadler. They were not parties to the initial unfair labor practice charges and a hearing on their charges was scheduled separately and independently of the previously consolidated cases.

On December 12, 1962, when the consolidated proceeding had accumulated about 1,800 pages of transcript and 100 exhibits, Trial Examiner Reyman adjourned the hearing *sine die*. Most of the testimony contained in the record had been elicited by the Board as adverse party testimony.

On January 4, 1963, defendant Madden issued an order consolidating the Kole case with the other cases previously consolidated and adjourned. On January 11, 1963, a similar order was issued similarly consolidating the Grill-Sadler case.

On January 7, 1963, Chief Trial Examiner Bokat, wrote all the parties in the consolidated cases that he had received Trial Examiner Reyman's "notice of disqualification, as provided for in Section

102.37 of the Board's Rules and Regulations." Bokat enclosed a copy of the Trial Examiner's notice, wherein Mr. Reyman had indicated that he was "deeming (himself) to be disqualified to further continue as Trial Examiner for reasons concerning (his) personal health, as reflected by the stenographic transcript of the proceedings of December 12, 1962, pp. 1702–1704." Bokat, therefore, informed the parties that he would designate another Trial Examiner and that a trial *de novo* would commence on the consolidated cases on January 15, in Chicago, Illinois.

On January 9, plaintiffs' counsel here and in the unfair labor practice cases before the Board, wrote Chief Trial Examiner Bokat requesting that he reconsider his designation of another Trial Examiner, and his rescheduling of a hearing *de novo* on the consolidated cases. On January 11, the Regional Director rescheduled the hearing on the consolidated cases from January 15 to January 22. On January 18 plaintiffs filed the present complaint.

 Defendants' contention that plaintiffs have failed to serve an indispensable party, George Bokat, Chief Trial Examiner of the Board, is without merit. A necessary or indispensable party as distinguished from a proper party is one who has such an interest in the controversy that a complete decision would be both unjust and impossible without him. The facts before me clearly indicate that I may proceed to judgment on the merits in this cause without the necessary joining of Bokat as a party defendant. Moreover, on January 23rd, defendants' counsel represented to this court that he was appearing in behalf of the defendants. No exception was made as to Bokat who was named a party defendant in the complaint. It is through this same counsel that Bokat is now questioning the court's jurisdiction over him. Bokat has, since his objection to this Court's jurisdiction, been served a copy of the complaint and summons by certified mail pursuant to the suggestion of defendants' counsel.

 Considering defendants' contentions that the court lacks jurisdiction over the subject matter of this action and that the complaint fails to state a claim upon which relief can be granted, there is indeed some question as to the jurisdiction of district courts to entertain suits such as this wherein a plaintiff seeks to enjoin Board action in the labor field. As a general rule plaintiffs who complain of the conduct of administrative bodies have properly been required to exhaust their administrative remedies prior to invoking the intervention of the courts. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. However, this general rule appears to be subject to certain exceptions. The Supreme Court in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, recognized the possibility of such an exception. Although the facts in Leedom are not identical to the facts presently before me, (the conduct of the Board there complained of related to representation matters under Sec. 9 of the Act), the Court clearly held that under certain circumstances district courts do have jurisdiction to enjoin actions of the Board notwithstanding a failure by the plaintiff to have exhausted administrative remedies. Our own Court of Appeals in Vapor Blast Manufacturing Co. v. Madden, 7 Cir., 280 F.2d 205, by way of dicta recognizes the possibility of exceptions to the general rule. Although the Court, on the basis of the facts before it, held that the District Court did not have jurisdiction, at page 209 it conditioned its ruling with the phrase " * * * in the absence of any extenuating circumstances . * * * ". Also, the Fourth Circuit Court of Appeals in Deering Milliken, Inc. v. Johnston, 295 F.2d 856, a case factually somewhat similar, but, not identical to this held, that the District Court did, under certain circumstances, have jurisdiction to enjoin the Regional Director of the National Labor Relations Board from proceeding with hearings ordered by the Board. There, as here, the Board was conducting an unfair labor

practice proceeding. The Court held that the Board's violation of the Administrative Procedure Act in failing to proceed with reasonable dispatch to conclude the matter before it, and the arbitrary and oppressive nature of its action, justified the District Court in taking jurisdiction notwithstanding nonexhaustion of administrative remedies.

Thus, it is obvious that there are exceptions to the general rule that, where a complainant has failed to exhaust his administrative remedies the district courts cannot take jurisdiction over complaints alleging improprieties in administrative hearings. My study of the aforementioned decisions leads me to conclude that in order to justify the existence of injunctive jurisdiction in the district courts the complaint must allege and the facts must show, first, that the actions of the Board were in excess of its authority or went beyond limitations otherwise imposed upon it; second, the natural and probable result of the above conduct must be irreparable injury to the plaintiff; and third, it must be shown that plaintiff lacks an adequate administrative or judicial remedy.

I find that the facts in this case satisfy all of the above requirements. Section 5(c) of the Administrative Procedure Act (5 U.S.C. § 1004(c) in its regulation of administrative agencies such as the Board, provides, that the " * * * same officers who preside at the reception of evidence pursuant to section 7 shall make * * * initial decision required by section 8 except where such officers become unavailable to the agency." The facts before me are that Trial Examiner Reyman who conducted the hearings, received the evidence, and recessed the hearings *sine die*, has since been assigned to and has conducted other Board hearings. Thus, the evidence demonstrates that Trial Examiner Reyman is still available to the Board, and that in accordance with the above statutory language he must decide the outcome of the hearings, if they are to be decided. Moreover, even if I were to accept the Board's contention, wherein it attempts to avoid the above statutory mandate by suggesting that Trial Examiner Reyman is not available to perform his duties due to illness, still I would have to find that such illness, allegedly the result of tension, clearly was caused entirely by the actions and conduct of Attorney Albert Gore at the hearings. A transcript of the hearings before Trial Examiner Reyman immediately prior to his recessing the hearings *sine die* indicates beyond any doubt that throughout the hearings he felt he had been "abused personally" and had "been insulted by counsel." There is no question but that he was referring only to Mr. Gore. Thus, any sickness due to tension Trial Examiner Reyman may now have was caused by what he felt to be the contemptuous and obstreperous conduct of attorney Gore. Mr. Gore represents a union against whom the Association and the dealers allegedly committed their unfair labor practices. Although in my mind there is some question as to Mr. Gore's standing and his right to actively appear at the hearings, in any event, he did appear, and his appearance was not only condoned but favored by the Board. In effect the Board was advocating the alleged rights of Mr. Gore's union. It would indeed be unjust and inequitable now to permit the Board to avoid the provisions of the Administrative Procedure Act by claiming the existence of a sickness which it caused. It is only fair also to observe that in my opinion the Board's action here in question was occasioned not so much by its solicitude for the Trial Examiner's health as by its fear of his unfavorable decision were he permitted to resume the case.

The existence of irreparable injury to the plaintiffs is manifestly patent. Plaintiffs, unless this court intervenes, will be required again to spend both time and money in defending against the same charges. Although this fact in and of itself might not "shock the conscience of the court", the possibility is now present that the Board, if it once more appears that still another Trial Examiner favors the defending party, might again cause

the hearings to be recessed *sine die*. Such conduct is shocking, to say the least. Also, the Board's Rules which deny to the parties what would otherwise appear to be a right to discovery in such unfair labor practice cases, would in this instance create a manifest injustice to the plaintiffs if the charges against them were retried. A great deal of the transcript consists of adverse party testimony by plaintiff's witnesses interrogated by the Board. Were a subsequent trial *de novo* to be conducted plaintiffs would now be at an unfair disadvantage in that the Board would, in effect, have obtained that which it would deny plaintiffs, the right to discovery.

Plaintiffs not only lack an adequate administrative remedy, but, it is entirely possible that they lack any remedy at all. Review of Board action in unfair labor practice cases applies only to its final orders. There is no right to interlocutory appeal. Should the plaintiffs be now forced to again represent themselves at a *de novo* hearing, and should the Board prematurely terminate those hearings, as they have here, or if the findings of the Board are not adverse to the plaintiffs, then the present action of the Board now before me would be unappealable. On the other hand, if the Board were to conduct the *de novo* hearing and enter a final order finding the plaintiffs guilty of committing unfair labor practices, and if plaintiffs then availed themselves of their recourse in the Court of Appeals, and if the Court of Appeals found, as I now find, that the actions of the Board contravened the Administrative Procedure Act, that Court still could not redress the present wrong. It could only refuse to enjoin what the Board had held were unfair labor practices by the plaintiffs. Thus, not only a second but a third trial on the merits of this case would be necessary.

Parenthetically, I might comment on what would appear to be an attempt by the Board to avoid making a final decision on what seems to be the deciding legal issue involved in all of these cases—whether an automobile salesman is or is not a supervisor within the meaning of the Act. This is not the first time I have been called upon to adjudicate a matter related to this same basic dispute between these same parties. Although, due to the limited nature of the litigation before me, I have not been fully exposed to all of the facts concerning these disputes, it seems to me that the entire controversy could be quickly and finally resolved by deciding this single legal issue relating to the status of automobile salesman. If this is, as I suspect, the situation, then it would behoove the Board to reach a final decision on this dispositive issue as soon as possible. I express my own hope that this will be done.

The futility of plaintiffs' position is apparent. If there is anything left of the inherent equity powers of the District Court, then I cannot now give judicial approbation to the Board's actions, nor can I stand by and permit this grossly unjust situation to continue and develop within my District, mindful though I am of the general legislative policy against court intervention in labor disputes. To force plaintiffs to submit to a *de novo* hearing in light of the present facts would be to abrogate the fundamental principles of equity which I am sure the Congress never intended. I must and I do assume jurisdiction herein.

Accordingly, I hereby enjoin and restrain the National Labor Relations Board, its officers, employees and agents from conducting a trial *de novo* of the present unfair labor practice hearing against the plaintiffs. I hereby further order and direct the said Board and its Chief Trial Examiner to re-assign Trial Examiner Arthur Reyman to reopen the hearings he recessed *sine die* on December 12, 1962, to complete the same and to prepare and issue his Report on the cases herein at whatever time and date within one year hereafter, he, in his sole discretion, shall determine he is able so to do.