**AFFILIATED HOSPITALS OF SAN FRANCISCO, a non-profit corporation, Plaintiff,**

v.

**James F. SCEARCE, Individually and as an officer and agent of the Federal Mediation and Conciliation Service, et al., Defendants.**

**No. C–76–1888 WWS.**

United States District Court,
N. D. California,
Civil Division.

Sept. 7, 1976.

Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiff Affiliated Hospitals of San Francisco.

Corbett, Welden, Kane & Berk, Emeryville, Cal., for plaintiff Associated Hospitals of San Francisco and the East Bay.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., Civ. Div., San Francisco, Cal., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING INJUNCTION

SCHWARZER, District Judge.

This is an action brought by the collective bargaining representative of a group of private non-profit hospitals to enjoin the Director of the Federal Mediation and Conciliation Service ("FMCS") and others from permitting a board of inquiry, established pursuant to Section 213 of the Labor Management Relations Act (29 U.S.C. § 183), to proceed with the investigation of a labor dispute. Inasmuch as the Board, which was established by the Director on August 31, 1976, was about to proceed with its investigation, plaintiff, on September 3, 1976, moved for a temporary restraining order. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, plaintiff gave notice to defendants of its intention to seek injunctive relief. At a hearing before this Court held on September 3, 1976, counsel for both plaintiff and defendants appeared and were heard. In addition, counsel for Associated Hospitals of San Francisco and the East Bay, a group of hospitals involved in a substantially identical dispute with defendants, appeared and was granted leave to intervene.

### THE FACTS

Plaintiff is a multi-employer collective bargaining association, comprising eight private non-profit hospitals. It is a party to a master collective bargaining agreement with Stationary Engineers Local 39, a labor organization. The current agreement expires by its terms on September 30, 1976.

By letter dated June 11, 1976, Local 39 notified plaintiff pursuant to the provisions

of the agreement of its intention to open the agreement for negotiations. On June 28, 1976, FMCS received from Local 39 notice, in the form provided by FMCS, that "notice of the proposed termination or modification of the existing collective bargaining contract was served upon the other party to this contract [plaintiff] and that no agreement has been reached."

On August 31, 1976, the Director of FMCS gave notice that effective that date defendant William W. Ward was appointed chairman of a board of inquiry in the dispute between plaintiff and Local 39. The notice directs the board to investigate the issues involved in the dispute and make a written report to the parties within fourteen days, the report to contain findings and recommendations.

## THE POSITIONS OF THE PARTIES

■ The issue before the Court is whether the Director's action establishing the board of inquiry was taken within the time permitted by Section 213. Section 213 provides in relevant part:

"If, in the opinion of the Director of the Federal Mediation and Conciliation Service a threatened or actual strike or lockout affecting a health care institution will, if permitted to occur or to continue, substantially interrupt the delivery of health care in the locality concerned, the Director may further assist in the resolution of the impasse by establishing within 30 days after the notice to the Federal Mediation and Conciliation Service under clause (A) of the last sentence of section 8(d) (which is required by clause (3) of such section 8(d)), or within 10 days after the notice under clause (B), an impartial Board of Inquiry to investigate the issues involved in the dispute and to make a written report thereon to the parties within fifteen (15) days after the establishment of such a Board."

Plaintiff contends that the Director's action on August 31, 1976, came too late. It argues that the Director's authority is limited to establishing a board

"within 30 days after the notice to the [FMCS] under clause (A) of the last sentence of Section 8(d) . . ."

The notice referred to in Section 8(d)(A) (29 U.S.C. § 158(d)(A)) is the notice to the FMCS required by Section 8(d)(3) to be given, if a dispute exists, within thirty days after notice to the other party of the proposed contract termination or modification.

It is undisputed that a notice of proposed termination or modification was given to plaintiff by Local 39 on June 11, 1976, and that within 30 days, i. e. on June 28, 1976, Local 39 gave notice to FMCS of the existence of a dispute, i. e. that no agreement had been reached.

From these facts plaintiff argues that the Director's authority to establish a board expired thirty days from the latter notice, i. e. on July 28, 1976.

Defendant's position is that the statute permits the Director to establish the board at any time after notice of a dispute until 30 days after the date by which the notice is *required to be given.* Under Section 8(d)(A), the notice to the FMCS of the existence of a dispute is required to be given not later than 60 days before the expiration of the contract—in this case, August 1, 1976. (Failure to give timely notice may result in a violation of the statutory duty to bargain in good faith.) Thus, in a case such as the instant one, where the notice of dispute is given earlier than required by the statute, the Director considers his time to act nonetheless to run until 30 days after the last day on which the notice *could* have been given—in this case, until August 31, 1976.

The Court is thus confronted with the rather fine semantic question whether Congress, when it said "within 30 days after the notice to the [FMCS] under clause (A) . . ." meant

"within 30 days after the *giving of the notice*"

or

"within 30 days after the *last day permitted for the giving of the* notice."

## DISCUSSION

This Court has jurisdiction of the action as one arising under an Act of Congress regulating commerce. 28 U.S.C. § 1337. *Garrett v. Time-D.C., Inc.,* 502 F.2d 627 (9th Cir.), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975).

The issue before the Court does not involve review of the exercise of discretion by the Director. The issue is whether the Director has acted within the limitations imposed upon him by law, not whether he has acted reasonably or unreasonably. *Seattle Trust & Savings Bank v. Bank of California, N.A.,* 492 F.2d 48 (9th Cir.), *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974).

After reviewing the memoranda and other materials submitted by the parties, the Court is compelled to conclude that the Director's interpretation of the statute is erroneous and that his action was unauthorized. The Director's interpretation would require us to read the word "notice" as referring not to the actual notice given but to a hypothetical notice that *could* have been given. Section 213 may not be the epitome of careful draftsmanship but it is sufficiently clear not to admit of such a strained construction. Had Congress intended the result urged by the Director, namely that "the entire procedure is to operate during the final 60-day period of the contract," it could have readily said so.

Not only does the statute fail to reflect such a purpose, but its legislative history does not support it. The Senate initially rejected an amendment, offered by Senator Dominick, which would have provided for establishment by the Director of boards of inquiry. (120 Cong. Rec. 12970–75, May 2, 1974.) Senator Taft argued that to involve FMCS as a judge in a labor dispute would destroy its utility as a conciliator and mediator. (120 Cong. Rec. 12972, May 2, 1974.)

The House of Representatives, however, after debate, adopted an amendment providing for a 60-day cooling-off period and authorizing establishment by the Director of boards of inquiry without time limit. (120 Cong.Rec. 16913, May 30, 1974.)

Both the House and Senate bills went to conference which agreed on a compromise bill, accompanied by a conference report. With respect to the provisions of Section 213(a), the report states:

"The Senate receded with an amendment under which in the event that the labor dispute by the health care institution and its employees is not settled and the Director of the FMCS determines that the dispute substantially threatens to interrupt health care in the affected locality the Director may create a board of inquiry to investigate and report with respect to such dispute. The Board must be appointed within 30 days after the FMCS is notified of the intention of either or both of the parties to terminate the contract as required under section 8(d) of the NLRA, as amended by this legislation, or 10 days after the FMCS is notified in the case of an initial contract." 1974 U.S. Code Cong. and Adminis. Ser. 3960.

The language of the conference report leaves no doubt that Congress intended to impose a strict time limit on the Director and to require him to act "within 30 days after the FMCS is notified . . . ." *

The subsequent debates showed that the language of Section 213 reflected a carefully crafted compromise. For example, Senator Williams stated:

"The Senate Committee strove for a balanced solution, and the language of its bill and its report and the explanations thereon by its managers, reflect the precise results of its studied effort to deal specifically and in an even handed manner with these problems. This legislation is a product of compromise, and the National Labor Relations Board in administering the act should understand specifi-

---

\* While the statement reflects some confusion respecting the content of the notice to FMCS, i. e. whether it is a notice to terminate or a notice that a dispute exists, it leaves no doubt whatev-er that the intention was to have the time run from the actual receipt of notification by FMCS.

cally that this committee understood the issues confronting it, and went as far as it decided to go and no further and the Labor Board should use extreme caution not to read into this Act by implication— or general logical reasoning—something that is not contained in the bill, its report and the explanation thereof." (120 Cong. Rec. S12104, July 10, 1974.)

In the same vein, Senator Javits (also a member of the Joint Conference Committee) stated:

"This legislation represents long and careful study by the committee and negotiation between representatives of organized labor and hospital management. Its provisions have been carefully tailored to meet the particular problems of labor-management relations involving health care institutions." (120 Cong. Rec. S12107, July 10, 1974.)

The legislative history shows that while the Senate felt that cooling off periods and boards of inquiry would not help resolve labor disputes, the House apparently believed that the convening of a board before a dispute reaches a critical strike stage would be beneficial. The statements on the floor confirm that the compromise solution imposed strict limits on the authority of the Director to establish such boards, and that he had to act "within 30 days after the FMCS is notified . . ." (See 120 Cong.Rec. 12108, also 12103, 12106, July 10, 1974.)

The Court accordingly concludes that the establishment of the board in this case, having been made more than 30 days after notification to the FMCS under Sections 8(d)(3) and 8(d)(A), came too late and was therefore unauthorized.

There may also be a question whether the action of the Director, even had it been timely, is supported by the findings required by the statute. There is nothing before the Court to show that the Director found, before establishing the board, that there was "a threatened . . . strike or lockout affecting a health care institution . . . [which would] if permitted to occur . . . substantially interrupt the delivery of health care in the locality concerned . . ." Such a finding would appear to be jurisdictional to the establishment of a board. Inasmuch as neither party raised the issue, and in view of the disposition of this matter, it is unnecessary to consider it here.

## APPROPRIATENESS OF RELIEF

■ That the establishment of a board of inquiry with power to investigate and make findings and recommendations will have an impact upon the collective bargaining process cannot be questioned. Its findings and recommendations, especially once they become public, cannot be ignored by the parties in arriving at negotiating positions. Congress has strictly limited the power of the Director to cause that kind of intervention—whether for better or for worse—in the bargaining process. To the extent that the Director exceeds the limits of his power, the parties have a right to be free from that intervention in their bargaining. Accordingly, and in the absence of any other adequate remedy, injunctive relief is appropriate. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

Although equitable considerations are not controlling in a case of this nature where the question concerns enforcement of Congressional policy, see *United States v. San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940), injunctive relief here would preserve the status quo. Once the board is permitted to proceed with its investigation, which the statute requires to be completed within 15 days, the damage will have been done. Relief at a later time will be of little if any value. See, *Latham v. Volpe,* 455 F.2d 1111, 1116–1117 (9th Cir. 1971).

An appropriate order shall therefore issue enjoining defendants from proceeding with the investigation or the issuance of findings or recommendations by the board of inquiry with respect to the dispute between plaintiff and Local 39.

Counsel is directed to submit an appropriate form of order. No bond shall be required.