SINAI HOSPITAL OF BALTIMORE, INC., Appellant,

v.

James F. SCEARCE, Individually and as National Director of the Federal Mediation and Conciliation Service, Appellee.

No. 76–2259.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1977.

Decided Sept. 7, 1977.

---

Leonard E. Cohen, Baltimore, Md. (Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.

Judith S. Feigin, Atty., U.S. Dept. of Justice, Washington, D.C. (Irving Jaffe, Acting Asst. Atty. Gen. for Baltimore, Washington, D.C., Jervis S. Finney, U.S. Atty., Baltimore, Md., and Ronald R. Glancz, Atty., U.S. Dept. of Justice, Washington, D.C., on brief), for appellee.

Before WINTER, BUTZNER and HALL, Circuit Judges.

WINTER, Circuit Judge:

Sinai Hospital of Baltimore, Inc. (Sinai) appeals from an order of the district court denying an injunction to restrain the defendant, Director of the Federal Mediation and Conciliation Service (FMCS), from continuing in effect and declining to withdraw his appointment of a Board of Inquiry to investigate a labor dispute at Sinai's hospital facility, and declining to enjoin the Board of Inquiry from functioning with regard to that dispute. The Board of Inquiry had been appointed pursuant to 29 U.S.C. § 183(a). Sinai's principal contention is that the appointment of the Board was untimely under the statute and that therefore the Board should be enjoined from undertaking its investigation. We agree. We reverse the district court's order and direct that the injunction issue.

## I.

To understand the facts of the instant case and the particular statutes controlling its disposition, we must begin with a general outline of the National Labor Relations Act (NLRA).

### A. *Statutory Scheme*

NLRA, 29 U.S.C. §§ 151 *et seq.*, is designed, *inter alia*, to prescribe the rights of employers and employees in their relations to each other and to protect the rights of the public in connection with labor disputes affecting commerce. In furtherance of these goals, the Act sets up certain procedures for the handling of threatened or actual labor strikes or management lockouts. Among these are the requirements that where there is in effect a collective bargaining agreement in an industry affecting commerce, no party to such agreement shall terminate or modify the contract without

(1) serv[ing] a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, . . . ;

(2) offer[ing] to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notif[ying] the Federal Mediation and Conciliation Service within thirty days after such notice [under (1), *supra*] of the existence of a dispute, and simultaneously therewith notif[ying] any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continu[ing] in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later: . . . . § 8(d) of the NLRA, 29 U.S.C. § 158(d).

As originally enacted, NLRA excluded from coverage all employees of non-profit hospitals. 29 U.S.C. § 152(2) (1970 ed.). However, in 1974, Congress, concerned with both the working conditions at these hospitals and the fact that the exemption had resulted in numerous instances of recognition strikes and picketing, amended the Act to eliminate the exemption and to establish new procedures governing labor relations in health care institutions.[1] The requirements of § 8(d) of the Act, 29 U.S.C. § 158(d), were extended to non-profit hospitals for the first time. In fact, procedures were made applicable to these institutions which were different from the procedures applicable to other statutory employers covered by the Act. When a labor dispute concerns a health care institution, (1) the notice of termination or modification, required by § 158(d)(1), must be given ninety days prior to contract expiration; and (2) the period during which the parties are required to maintain the status quo, established by § 158(d)(4), is lengthened to ninety days after such notice is given or until the expiration date of the contract, whichever occurs later. 29 U.S.C. § 158(d)(A).[2]

---

1. The change was effected by the Act of July 26, 1974, Pub.L. No. 93–360, 88 Stat. 395. Section 2(2) of the Act, 29 U.S.C. § 152(2), no longer maintains the exemption of non-profit hospitals.

2. Section 158(d)(A) also seems to amend § 8(d)(3) of the Act, 29 U.S.C. § 158(d)(3). The statutory period, originally set at thirty days, is apparently increased to sixty days (*i. e.*, notice must be provided to FMCS within sixty days of notice to the other contract party).

 Both parties to this lawsuit treat the change as an error in drafting, and continue to read § 8(d)(3) in its original form. This position is supported by the legislative history of § 158(d)(A). The statute was primarily intended to give FMCS at least sixty days notice before any contract expiration affecting a health care facility (as opposed to thirty days notice in the case of other employers). *See* Senate Report No. 93–766, [1974] U.S.Code Cong. & Admin.News pp. 3946, 3950. This is accomplished by "pushing back" the notice under § 8(d)(1) of the Act, 29 U.S.C. § 158(d)(1), from sixty to ninety days prior to contract expiration. Since, under the original language of § 8(d)(3), 29 U.S.C. § 158(d)(3), notice to FMCS ordinarily follows within thirty days thereafter, the Congressional purpose is effect-

Health care institutions, such as non-profit hospitals, were also subject to changes made in the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141 *et seq.* In 1974, Congress added § 213 to LMRA, which provided in part that

(a) If, in the opinion of the Director of the Federal Mediation and Conciliation Service a threatened or actual strike or lockout affecting a health care institution will, if permitted to occur or to continue, substantially interrupt the delivery of health care in the locality concerned, the Director may further assist in the resolution of the impasse by establishing within 30 days after the notice to the Federal Mediation and Conciliation Service under clause (A) of the last sentence of section 158(d) of this title (which is required by clause (3) of such section 158(d) of this title), . . . an impartial Board of Inquiry to investigate the issues involved in the dispute and to make a written report thereon to the parties within fifteen (15) days after the establishment of such a Board. The written report shall contain the findings of fact together with the Board's recommendations for settling the dispute, with the objective of achieving a prompt, peaceful and just settlement of the dispute. 29 U.S.C. § 183(a).[3]

The Federal Mediation and Conciliation Service (FMCS) is a government agency, designed to assist parties in the orderly resolution of labor disputes.[4] The reports made by Boards of Inquiry, though not binding, were intended to establish a helpful framework in the event a labor dispute became subject to arbitration.[5]

### B. *The Facts of this Case*

Sinai is a non-profit corporation which owns and operates a hospital in northwest Baltimore, Maryland. Sinai is also a party to a collective bargaining contract with the National Union of Hospital and Health Care Employees (union). The union, in turn, represents service and maintenance workers in the health care industry in several states.

The contract between Sinai and the union became effective on December 1, 1974 and expired on December 1, 1976. Prior to expiration of the contract, the union was desirous of renegotiating its terms. On August 10, 1976, the union sent notice to Sinai of its intent to seek a revised agreement. The notice, in the form of a letter from the union president, was intended to comply with § 8(d)(1) of NLRA, 29 U.S.C. § 158(d)(1). On September 20, 1976, a second notice was sent to the FMCS, intended to comply with § 8(d)(3) of NLRA, 29 U.S.C. § 158(d)(3).

Contract negotiations between Sinai and the union began on October 19, 1976, with the submission of union proposals. Additional meetings were held on October 26 and October 28, 1976, during which the union explained its demands and Sinai offered counterproposals. However, at the conclu-

---

ed. No change in § 8(d)(3) is therefore necessary.

**3.** Non-profit hospitals are covered by § 213, since "health care institutions" include

any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person. 29 U.S.C. § 152(14).

**4.** FMCS was established by § 202(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 172(a). Its function is

to prevent or minimize the interruptions of the free flow of commerce growing out of labor disputes, [by] assist[ing] the parties to labor disputes in industries affecting commerce to settle such disputes through conciliation and mediation. 29 U.S.C. § 173(a).

**5.** The legislative history reveals that Congress, in adding special mediation and conciliation procedures, including the Board of Inquiry, for the health care industry, recognizes the need for continuity of health care services during labor-management disputes and that the labor organizations representing health care workers have publicly pledged their best efforts to persuade their affiliates voluntarily to avoid work stoppages through acceptance of arbitration in the event of an impasse in negotiations. Under these new procedures, it is anticipated that, in the event of such an impasse, the findings of fact and recommendations of the Board of Inquiry would provide the framework of the arbitrator's decision. Conference Report No. 93–988, [1974] U.S.Code Cong. & Admin.News pp. 3959, 3960.

sion of the October 28th meeting, the union announced that it was cancelling any further negotiating sessions.

By means of a mailgram dated October 29 and October 30, 1976, defendant, as Director of FMCS, informed the parties that a Board of Inquiry had been appointed. The appointment was made pursuant to § 213(a) of the LMRA, 29 U.S.C. § 183(a). The Board itself was directed to "investigate the issues" dividing Sinai and the union, and to file a written report containing "findings of fact together with . . . recommendations for settling the dispute."

Sinai believed that the Board could serve no useful purpose, since the parties had just commenced negotiation and had not discussed the possibility of a strike or lockout when the old contract expired. In sum, no deadlock or impasse had been reached within the traditional collective bargaining sense. Therefore, on November 1, 1976, Sinai brought an action in the United States District Court for the District of Maryland, seeking to enjoin the Board from meeting.

The complaint itself was directed against the defendant, individually and as Director of FMCS. It alleged that defendant had improperly appointed the Board of Inquiry because (1) the appointment was made outside of the thirty-day period established by 29 U.S.C. § 183(a); and (2) the appointment was made without formal findings of fact by the defendant that Sinai was faced with a "threatened or actual strike or lockout" which would "substantially" affect the delivery of health care in metropolitan Baltimore. In terms of relief, Sinai requested a temporary restraining order, a preliminary injunction, and permanent injunction preventing the Board from going forward with its work.

On November 4, 1976, a preliminary injunction was issued. The district court found that the appointment was timely, but criticized the defendant for failing to specify what findings (if any) the appointment

was based upon. The district court then announced that the injunction would be dissolved if the defendant would state in writing "that [at the time of the appointment] he had substantial reason, consisting of more than a mere possibility, to believe that [a] threat of a strike or lockout affecting Plaintiff's health care facility existed, . . . ." On November 5, 1976, defendant presented such a statement in the form of a letter to the district judge. Three days later, the injunction was dissolved and the complaint dismissed.

Sinai then filed an appeal from the district court's order, and moved for an injunction pending review of the case on its merits. On November 10, 1976, an injunction pending appeal was granted.[6] We therefore now address the merits of the appeal.

II.

A. *In General*

■ During oral argument, we were advised (1) that Sinai and the union had resumed negotiations; (2) that the old contract had expired without a strike or lockout; (3) that virtually all outstanding differences have been resolved; and (4) that the sole remaining dispute, pertaining to wages, has been submitted to binding arbitration. Given these facts, it would seem that there is little (if anything) left for a Board of Inquiry to do. We do not think, however, that the appeal is moot.

The principal question raised by Sinai concerns the time period during which a Board of Inquiry may be appointed. Resolution of the question is basic to the operation of 29 U.S.C. § 183(a), and the question is likely to recur whenever the statute is invoked (*i. e.*, whenever the Director of FMCS decides to appoint such a Board). Sinai and the union have entered into three prior collective bargaining agreements within the period January 4, 1970 to December 1, 1976. The contracts were for terms of three, one and two years, respectively.

**6.** *Sinai Hospital of Baltimore, Inc. v. Scearce,* No. 76–2259 (4 Cir. November 10, 1976) (Memorandum and Order per Winter, J.).

It is likely that future collective bargaining agreements will be for short periods also, so that there is a substantial likelihood that at the behest of Sinai the same issue will again arise. The issue raised by Sinai is likely to escape judicial resolution. As the facts of this case reveal, parties to a labor dispute often settle their differences voluntarily, before contract expiration, and before the courts can intervene. Moreover, as the time sequence in the instant case demonstrates, it would be difficult, if not impossible, for a district court's resolution of the issue to be subjected to appellate review before the parties must take some action having the effect of rendering the appeal moot.

We therefore conclude that the appeal falls within a recognized exception to the mootness doctrine: the question presented is "capable of repetition, yet evading review." *Carroll v. Commissioners of Princess Anne,* 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); C. Wright, Law of the Federal Courts, § 12 at 39 (3d ed. 1976); 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3533 at 286 (1975). We hold that we should address the appeal on its merits.

### B. *Timeliness of the Board's Appointment*

Sinai's principal contention is that the district court erred in deciding that the appointment of a Board of Inquiry was timely. Sinai's argument is grounded upon the text of 29 U.S.C. § 183(a), which directs that an appointment can only be made within thirty days after the notice to the Federal Mediation and Conciliation Service under clause (A) of the last sentence of section 158(d) of this title (which is required by clause (3) of such section 158(d) of this title), . . . . 29 U.S.C. § 183(a).

■ Stripped of excess verbiage, the cross-reference is to the notice required under 29 U.S.C. § 158(d)(3), informing FMCS that an employer or a union desires to terminate or modify a collective bargaining contract.[7] In this case, the notice was provided by the union on September 20, 1976. The appointment of a Board of Inquiry did not take place until October 29, 1976, some *thirty-nine* days thereafter. Therefore, Sinai asserts that since the appointment did not take place within thirty days after the notice was given to FMCS, the appointment was without legal force or effect.

■ Defendant argues that § 183(a) must be interpreted in a broader fashion. According to defendant's submission, the statute should not be read to require an appointment within thirty days after the notice has been given. Rather, it should be read to require an appointment within thirty days *after the last day permitted for the giving of such notice.* In this case, the notice was actually given on September 20, 1976, but it could have been given as late as October 2, 1976.[8] Since the appointment took place on October 29, or within thirty

7. See § 8(d)(3) of the NLRA, 29 U.S.C. § 158(d)(3), as set forth in part IA of this opinion, *supra.*

The notice is intended to allow FMCS "the opportunity of entering into the negotiations [between the parties to a labor dispute] and trying to bring about a peaceful settlement." *Procter & Gamble Indep. Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co.,* 312 F.2d 181, 188 (2 Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).

8. The date of October 2, 1976 is arrived at in the following fashion:

(1) Notice to FMCS, under 29 U.S.C. § 158(d)(3), must be given within thirty days of the notice served upon the other contract party.

(2) Notice to the other contract party, under 29 U.S.C. §§ 158(d)(1), (A), must be given at least ninety days prior to expiration if the dispute involves a health care institution.

(3) Since the latest possible date for notice under §§ 158(d)(1), (A) is ninety days prior to expiration, the latest possible date for notice under 29 U.S.C. § 158(d)(3) is sixty days prior to expiration.

(4) In this case, contract expiration was set to occur on December 1, 1976. The latest possible date for notice to Sinai is September 2, 1976 (ninety days prior). The latest possible date for notice to FMCS is October 2, 1976 (sixty days prior).

days of October 2, it should be upheld as timely.

The district court adopted defendant's analysis and approved the Board's appointment as timely. We disagree. While § 183(a) may not be the epitome of careful draftsmanship, a literal reading of its language supports the construction advocated by Sinai. Moreover, the legislative history of § 138(a) clearly indicates that appointments are to be governed by the actual receipt of notice and not by a hypothetical date upon which notice may be received.

As noted in part IA of this opinion, *supra*, § 183(a) was added to LMRA in 1974. The relevant Conference Committee Report indicates that, under its provisions,

> The Board [of Inquiry] *must be appointed within 30 days after the FMCS is notified* of the intention of either or both of the parties to terminate the [collective bargaining] contract as required by § 8(d) of the NLRA [29 U.S.C. § 158(d)], as amended by this legislation, . . . . Conference Committee Report No. 93–988, [1974] U.S.Code Cong. & Admin.News pp. 3959, 3960 (emphasis added).

Senator Javits, a member of the Conference Committee, added similar remarks when § 183(a) was the subject of debate on the Senate floor:

> [T]he Director of FMCS is to decide, within the first 30 days after receiving the required 60-day notice of contract termination, whether a threatened work stoppage would substantially interrupt the delivery of health care services in a locality. He will then appoint an impartial board of inquiry to investigate the issues in the dispute. 120 Cong.Rec. 22578 (U.S. Senate July 10, 1974).

Senator Taft also indicated that § 183(a) refers to actual receipt of notice:

> The board [of inquiry] must be appointed within 30 days after FMCS is notified of

the intention of either or both of the parties to terminate [a collective bargaining contract]. 120 Cong.Rec. 22579 (U.S. Senate July 10, 1974).

Finally, Rep. Kastenmeier explained that

> FMCS is permitted to convene an impartial Board of Inquiry in the event a labor dispute threatens to close a health care facility or facilities upon which a community may be dependent. Such a Board can be convened within 30 days after the notice of a contract expiration. . . . 120 Cong.Rec. 22948 (U.S. House of Representatives July 11, 1974).

The thrust of these comments is unmistakable. The statute must be read as Sinai has suggested, and the Board's appointment in this instance must fail.[9]

Notwithstanding defendant's argument, we do not think that a contrary result is dictated by the remarks of Rep. Thompson made during the House debates on § 183(a). Rep. Thompson (of New Jersey) was the House manager of S. 3203, 93d Cong., 2d Sess. (1974), the bill which ultimately resulted in § 183(a). He explained that under the new bill, the following events would occur if a union sought to terminate its contract with a hospital:

> First, 90 days before termination a written notice to the hospital to start negotiation;
>
> Second, 60 days before termination a written notice to FMCS and the start of mandatory mediation;
>
> Third, 30 days before termination the Director of FMCS could appoint the Board of Inquiry to investigate and report on the labor dispute;
>
> Fourth, 15 days before termination the Board of Inquiry reports to the parties with its findings of fact and recommendations for settlement; . . . . 120 Cong.Rec. 22942 (U.S. House of Representatives July 11, 1974).

---

**9.** A similar conclusion, based upon similar facts, was reached by the court in *Affiliated Hospitals of San Francisco v. Scearce*, 418 F. Supp. 711, 93 LRRM 2307 (N.D.Cal.1976).

In *Affiliated Hospitals,* a Board of Inquiry was appointed 64 days after notice had been given under 29 U.S.C. § 158(d)(3). Plaintiff insisted that the appointment was untimely, relying (as did Sinai) upon the text of 29 U.S.C. § 183(a). The court reviewed the legislative history of § 183(a), and held that the appointment must be made within thirty days after actual receipt of the notice. The instant appointment was therefore held to be improper.

Defendant stresses that "60 days before termination" is identified as the time when notice is provided to FMCS (under 29 U.S.C. § 158(d)(3)), and "30 days before termination" is identified as the time when FMCS may appoint a Board of Inquiry. Since 60 days prior to termination is the latest possible date upon which notice may be given to the agency,[10] and the appointment of a Board of Inquiry is described as occurring 30 days thereafter, defendant claims that his construction of the statute must prevail. We think, however, that when read in context, the remarks of Rep. Thompson reflect merely an idealized example of the statute in operation, where each of the various parties (union, FMCS, and Board of Inquiry) performs its role exactly on the last date allowed by law.[11] It does not express an intention to prescribe the same timetable when the parties give notices earlier within the permissible time period.

### III.

Since the district court upheld the appointment as timely, its final order must be reversed and remanded.[12] On remand, Sinai is entitled to the injunctive relief which it prayed.

REVERSED AND REMANDED.

10. See note 8, supra.

11. In other words,

(1) Under 29 U.S.C. §§ 158(d)(1), (A), the union must provide notice to the hospital at least ninety days prior to termination. The latest possible date would therefore be ninety days prior to termination.

(2) Under 29 U.S.C. § 158(d)(3), the union must notify FMCS within thirty days after notice to the hospital. Therefore, the latest possible date would be sixty days prior to termination.

(3) Under 29 U.S.C. § 183(a), the Director of FMCS may appoint a Board of Inquiry within thirty days after the notice it receives. The latest possible date would be thirty days prior to termination.

(4) Also, under 29 U.S.C. § 183(a), the Board of Inquiry must report to the parties within fifteen days after its establishment. The latest possible date would be fifteen days prior to termination.

12. Because of the decision that we reach, it is unnecessary to address a second issue presented by Sinai; namely, that the appointment of a Board of Inquiry was not accompanied by certain findings of fact required to be made by the defendant.