SUSQUEHANNA VALLEY ALLIANCE, **Ronald L. Davis, Betty Tompkins, Beverly M. Hess, Doreen E. Snell, Plaintiffs,**

v.

**THREE MILE ISLAND NUCLEAR REACTOR, General Public Utilities, Metropolitan Edison Company, Jersey Central Power & Light Co., Pennsylvania Electric Co., Nuclear Regulatory Commission, Joseph A. Hendrie, Herman Dieckamp, Walter M. Creitz, W. A. Verrochi, Shepard Bartnoff, Defendants.**

Civ. A. No. 79–658.

United States District Court,
M. D. Pennsylvania.

Oct. 12, 1979.

Widoff, Reager, Selkowitz & Adler, P. C., Larry B. Selkowitz, Harrisburg, Pa., Public Interest Law Center of Philadelphia, Albert J. Slap, Philadelphia, Pa., Minney, Mecum & Kohr, Jean Royer Kohr, Lancaster, Pa., for plaintiffs.

Shaw, Pittman, Potts & Trowbridge, George F. Trowbridge, Thomas A. Baxter, Mark Augenblick, Washington, D. C., Reed, Smith, Shaw & McClay, Christopher Zettlemoyer, Harrisburg, Pa., for private defendants.

Stephen F. Eilperin, William Cohen, Jose Uranga, U. S. Dept. of Justice, Washington, D. C., for Nuclear Regulatory Com'n and Joseph A. Hendrie.

Carlon M. O'Malley, Jr., U. S. Atty., Scranton, Pa., for Federal defendants.

## MEMORANDUM

RAMBO, District Judge.

This case is a sequel to the nuclear accident which occurred on March 28, 1979, at Unit No. 2 of the Three Mile Island (TMI) nuclear power plant. The island on which the power plant was built is in the Susquehanna River near Harrisburg, Pennsylvania. As a result of the accident, there are several hundred thousand gallons of radioactively contaminated water in the containment building of Unit No. 2 and in tanks in auxiliary buildings. The water is of varying levels of contamination. The dispute at hand concerns the steps being taken to dispose of the contaminated water.

Plaintiff, Susquehanna Valley Alliance, was formed in 1979 to preserve and protect the environmental quality of the Susquehanna River and the surrounding area. The individual plaintiffs live in Lancaster County, downstream from the damaged reactor. They allege that they drink and bathe in water whose source is the Susquehanna.

Plaintiffs fear that the treatment technology available to deal with the contami-

nated water problem may not be adequate to decontaminate the liquid without high risks of additional releases of radioactive pollutants into the air and water. As a result of these fears, a suit was filed on May 25, 1979, against the reactor itself, the Nuclear Regulatory Commission (NRC), the private companies which own TMI (General Public Utilities Corporation, Metropolitan Edison Company, Jersey Central Power and Light, and Pennsylvania Electric Company), and several individuals in decision making positions with either NRC or the private companies.

It is undisputed that the private defendants have proceeded with the construction of a system, known as Epicor II, which is designed to treat the intermediate level contaminated water. Highly contaminated water will be treated by another system which is still in the study and design stage. NRC did not require the private defendants to apply for a construction permit prior to building Epicor II, nor has it yet determined if the private defendants must apply for a modification of their license before operating Epicor II.

The complaint contains four counts which set forth the following claims. Count I charges that the steps being taken to deal with the radioactive wastes at TMI are major federal actions within the meaning of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321, et seq. NEPA requires that, whenever the federal government plans to take action which may have an impact on the environment, the agency contemplating the action study and report on the potential environmental impact of the planned activity. 42 U.S.C. § 4332. Because the waste water processing and disposal activity is claimed to be within the scope of NEPA, plaintiffs request that the court declare that the defendants are in violation of NEPA, and compel NRC to prepare an environmental impact statement.

Count II deals with NRC regulations and parts of the Atomic Energy Act, 42 U.S.C. § 2011, et seq. It is plaintiffs' contention that, under the statute and regulations,

NRC should have required the nuclear plant operators to apply for a construction permit prior to building Epicor II, and should require that TMI's license be amended before permitting Epicor II to operate. The court is asked to declare that the defendants are in violation of the Atomic Energy Act and to enjoin activities related to the disposal of high level radioactive water until both the utilities and NRC comply with all applicable federal statutes.

Count III states that the defendants will violate Section 301(f) of the Clean Water Act of 1977, 33 U.S.C. § 1311(f), because "high level radioactive pollutants may be discharged into the river" through failure of the pollution control technology to treat these wastes. Count IV raises constitutional issues. It charges NRC with violations under the first, fifth, ninth, tenth and fourteenth amendments which allegedly protect plaintiffs' right "to be born and to live mentally and physically unimpaired."

On the same day that the present action was filed, NRC issued a statement directing its staff to prepare an environmental assessment dealing with proposals to decontaminate and dispose of radioactively contaminated waste water at the TMI facility. In that statement, NRC declared that:

> [t]he assessment should include discussion of potential risks to the public health and safety, including occupational exposures and the risk of accidental releases, and a discussion of alternatives to the Epicor II system.

The NRC directive ordered that, until the assessment on *processing* the intermediate radioactive waste water was completed, and the public had been given an opportunity to comment on the staff report resulting from the assessment, the licensee was not to operate Epicor II for other than testing purposes. NRC permitted the testing to proceed on the condition that only nonradioactive water was to be utilized in the trial operations.

The first phase of the environmental assessment was released on August 14, 1979. The report concluded that the proposed use of Epicor II for the *processing* of the inter-

mediate radioactive wastes in the TMI–2 auxiliary building would not significantly affect the quality of the human environment. Therefore, the NRC staff recommended that no environmental impact statement be prepared for the processing stage related to intermediate level contamination. The assessment, and the conclusion regarding an environmental impact statement are subject to a period of comment by the public and other federal agencies. *See* 44 Fed.Reg. 48829 (August 20, 1979). Then NRC will decide whether to adopt the staff recommendation and allow Epicor II to process the intermediate level waste water.

Reports assessing the environmental consequences of *disposal* of the intermediate level processed contaminated water and the processing and disposal of the highly radioactive water have yet to be released. They also will be subject to public scrutiny prior to adoption by NRC.

Both NRC and the private defendants filed motions to dismiss the case for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction in this court.[1] They contend that Count I should be dismissed as moot because NRC has undertaken an environmental assessment of the actions related to the cleanup operation at TMI–2. With regard to the issues raised in all four counts, defendants urge that this court lacks subject matter jurisdiction because plaintiffs must first exhaust their administrative remedies by seeking through NRC the relief sought in this court. Should NRC render a decision adverse to plaintiffs, defendants believe those decisions would fall within the meaning of "final licensing" orders, and contend that jurisdiction to consider a contested NRC ruling is in the court of appeals, not the district court.

In order to decide if the defendants are correct in stating that plaintiffs have failed to exhaust their administrative remedies, the court must determine what admin-

istrative remedies, if any, are open to plaintiffs. The first question to consider is whether or not plaintiffs have standing to seek NRC action. Under the following NRC regulation, groups or individuals with concerns similar to plaintiffs have a right of recourse to the Commission:

### 10 C.F.R. Section 2.206

(a) Any person may file a request for the Director of Nuclear Reactor Regulation, director of Nuclear Material Safety and Safeguards, Director, Office of Inspection and Enforcement, as appropriate, to institute a proceeding pursuant to § 2.202 to modify, suspend or revoke a license, or for such other action as may be proper. . . .

(b) Within a reasonable time after a request pursuant to paragraph (a) of this section has been received, the Director of Nuclear Reactor Regulation, Director of Nuclear Material Safety and Safeguards, Director Office of Inspection and Enforcement, as appropriate shall either institute the requested proceeding in accordance with this subpart or shall advise the person who made the request in writing that no proceeding will be instituted in whole or in part, with respect to his request, and the reasons therefor.

(c)(1) Director's decisions under this section will be filed with the Office of the Secretary. Within twenty (20) days after the date of a Director's decision under this section that no proceeding will be instituted or other action taken in whole or in part, the Commission may on its own motion review that decision, in whole or in part, to determine if the Director has abused his discretion.

The quoted regulation allows plaintiffs to ask NRC for all the relief sought in this court. The phrase "or for such other action as may be proper" gives latitude to challenge a variety of activities related to the construction and possible use of Epicor II

---

1. The federal defendants had previously filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). At the time the motion to dismiss was filed, the court had not addressed the venue motion. Since the court concludes that it has no subject matter jurisdiction over the action, transfer to another district would be inappropriate.

and future decontamination equipment. The acts complained of in Count II will be reviewed by NRC if plaintiffs request that NRC determine whether or not the operation of Epicor II should be subject to a licensing amendment. Should NRC determine that a licensing amendment is appropriate, then the Commission's environmental regulations will have to be followed. See 10 C.F.R. §§ 51.5 through 51.26.

If plaintiffs desire a more comprehensive environmental analysis than that which NRC has agreed to provide, the breadth of the regulation would permit a request for an integrated environmental impact statement on the entire decontamination process. Thus, Count I, if not moot, is subject to the exhaustion requirement.

Count III, which is tenuous at best because it is based on a possible future action, is also subject to the exhaustion principle. Plaintiffs may request a proceeding to determine whether there is a danger that the decontamination process will result in the discharge of high level radioactive pollutants into the river. Similarly, Count IV is subject to administrative review before it may be considered by the court. It is within the Commission's expertise to determine what health hazards, if any, are posed by the recovery activities at TMI.

If NRC refuses to institute proceedings requested under 10 C.F.R. § 2.206, or, if plaintiffs elect to challenge a final order resulting from proceedings held by NRC, plaintiffs have a right of appeal. Congress designated the forum of review of certain final orders of NRC when it enacted 28 U.S.C. § 2342, which provides:

> The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
>
> .     .     .     .     .
>
> (4) all final orders of the Atomic Energy Commission made reviewable by section 2239 of Title 42 .   .   . .[2]

Section 2239 of Title 42 of the United States Code makes reviewable:

> [A]ny proceeding under this chapter for the granting, suspending, revoking, or amending of any license or construction permit or application to transfer control; and   .   .   .   any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees   .   .   .   .

The jurisdiction vested by the two quoted sections of Title 42 has allowed the courts of appeals to review a variety of NRC decisions which are relevant to the relief sought by plaintiffs. A determination by NRC that it would not institute a proceeding, sought under 10 C.F.R. § 2.206, to "modify, suspend or revoke" a special nuclear material license was considered by the Seventh Circuit Court of Appeals. People of the State of Illinois v. Nuclear Regulatory Commission, 591 F.2d 12 (7th Cir. 1979).

In another case NRC decided that a particular project did not fall within its licensing authority. That final order was reviewed by the Court of Appeals for the District of Columbia. The court stated that it was reviewing NRC's determination on licensing jurisdiction directly, rather than reviewing a district court's prior ruling on the same issue, because the district court lacked jurisdiction to review the question of NRC's licensing jurisdiction. Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 196 U.S.App.D.C. 354, 606 F.2d 1261 (D.C.Cir. 1979). Thus, if plaintiffs request that NRC either assert licensing jurisdiction over the recovery activities, or that it change the present status of the license for TMI–2, a decision on those requests would be reviewable in the court of appeals. Similarly, if NRC decides that the operation of Epicor II should be subject to a licensing change, the court of appeals could review the sufficiency of NRC's consideration of environmental factors during the licensing proceedings. Vermont Yankee Nuclear Power Corp. v.

2. The Atomic Energy Commission was abolished in 1974. Title 42 U.S.C. § 5841(f) transferred to NRC "all licensing and related regulatory functions of the Atomic Energy Commission."

*NRDC,* 435 U.S. 519, 555, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); *Coalition for Safe Nuclear Power v. United States Atomic Energy Commission,* 150 U.S.App.D.C. 118, 463 F.2d 954 (D.C.Cir. 1972).

■ It is a well established principle of law that a plaintiff must seek redress of grievances with the appropriate administrative agency, in this case NRC, prior to asking the court to take action on matters within the jurisdiction of an agency. *Coalition for Safe Nuclear Power, supra.* This requirement has developed to prevent premature interference with agency processes, and to allow the agency the opportunity to review its own decisions. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

■ Plaintiffs acknowledge the doctrine of exhaustion of administrative remedies, but contend that this case is subject to certain exceptions to that doctrine. Citing *City Bank Farmers Trust Company v. Schnader,* 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934), for the principle that exhaustion is not required when seeking an administrative remedy would be futile, plaintiffs claim that recourse to NRC would be futile. The present case is not factually similar to *City Bank.* In *City Bank* the executor of an estate was challenging an inheritance tax assessed by the Commonwealth of Pennsylvania. Plaintiff had been in direct contact with appropriate authorities who had orally advised him that his claim of nontaxability would be denied. The court recognized the futility of forcing the plaintiff to await confirmation of that denial when he would simply have to file suit again. In the present case plaintiffs do not allege that they have had any communication with NRC, in spite of the fact that NRC regulations recognize and provide for the right of concerned citizens to question NRC decisions. They argue that the fact that NRC did not require the reactor owners to apply for a construction permit before the building of Epicor II demonstrates the futility of approaching the agency for relief.

The situation created by the accident at TMI is highly complex. NRC may well have been acting in accord with the totality of its regulatory obligation when it allowed the construction of Epicor II to proceed. That decision does not indicate the futility of the definite nature which is necessary to allow a court to bypass the prerequisite of exhaustion of administrative remedies. It would be an unjustified interference with NRC authority for this court to intervene in the present instance, when the agency itself may decide to grant plaintiffs the relief they seek.

The second theory which plaintiffs advance to skirt the exhaustion rule is that NRC has violated clear, nondiscretionary legal duties. First they charge that, because NRC has not issued an environmental impact *statement* regarding the proposed recovery operations at TMI–2, NRC has disregarded the mandates of the National Environmental Policy Act.[3]

Plaintiffs rely on *Izaak Walton League of American v. Schlesinger,* 337 F.Supp. 287 (D.D.C.1971). In *Izaak Walton* the United States District Court for the District of Columbia did find that it had jurisdiction to consider a claim that the Atomic Energy Commission (AEC) had violated a clear, nondiscretionary statutory mandate under

---

3. The issue of whether a district court may exercise concurrent jurisdiction because a violation of NEPA is alleged was decided in *City of Rochester v. Bond,* 195 U.S.App.D.C. 345, 603 F.2d 927 (D.C.Cir. 1979). The court rejected the thesis that a district court could exercise concurrent jurisdiction because the complaint alleged a NEPA violation. The following reasoning is equally applicable to the present case:

The rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts.

The choice of forum is, as we have said, for Congress and we cannot imagine that Congress intended the exclusivity *vel non* of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals. The likelihood of duplication and inconsistency would exist in either case. [At p. 354, 603 F.2d at p. 936].

NEPA. The AEC had revised its regulations to permit the issuance of an interim operating license for a nuclear power station prior to the preparation of a NEPA statement.[4] No interim license had been issued, but the court held that finality was established by the regulations themselves which did not require an evaluation of environmental factors before interim licensing. In that case the court was not called upon to make a judgment on the sufficiency of the consideration of environmental factors, but rather had to decide whether the AEC regulations were in violation of NEPA.[5]

NRC's supervision of the recovery operations at TMI–2 presents a different set of facts. NRC has prepared an environmental assessment concerning the *processing* of the intermediate level waste water by Epicor II. It is under court order to do an environmental assessment on the other phases of the recovery. Thus NRC is complying with NEPA because it is evaluating the environmental consequences of its actions. The sufficiency of that compliance is a separate issue. In *Izaak Walton* AEC had made a decision, via its regulations, not to do this basic evaluation. That was the violation of a clear, nondiscretionary duty which vested the district court with jurisdiction. Here there is no comparable, clear nondiscretionary duty.

Plaintiffs further contend that by allowing the construction of Epicor II without requiring the reactor owners to apply for a construction permit NRC has violated another clear, nondiscretionary duty. They claim that, if NRC decides to allow the processing of the contaminated water prior to compelling the owners to obtain an amendment to their operating license, an additional violation of a clear, nondiscretionary duty will occur. The court does not agree with those propositions. Not all construction, nor every alteration at a nuclear power plant requires a construction permit. Neither is it obvious, under the existing statute, that an operating license amendment\must be obtained before Epicor II may process the waste water. The technical expertise needed to evaluate whether or not the recovery activities are subject to permits or licensing amendments exists within NRC.[6] That is the agency designated by Congress to regulate the nuclear industry, the district court is not. Congress has provided that NRC's licensing decisions may be reviewed by the courts, but it has vested that power in the court of appeals. Certainly, given the technical nature of the factors NRC must weigh in making its licensing decisions, this court is not in a position to declare that NRC has violated a clear, nondiscretionary duty.

The exceptions to the exhaustion doctrine do not apply to the facts of this case. The relief plaintiffs seek must be requested from NRC. Only after NRC has issued a final order with respect to the request will it be ripe for consideration by the courts. Because plaintiffs have failed to exhaust their administrative remedies, the com-

4. Under current NRC regulations a NEPA statement is published after an environmental evaluation. It may take the form of a full scale environmental impact statement, or may be what is termed a negative declaration, i. e. a statement that, because the contemplated action will have no significant effect on the environment, no environmental impact statement will be prepared. Either form of NEPA statement is available to the public. *See* 10 C.F.R. §§ 51.1–51.52.

5. In *Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission,* 196 U.S.App.D.C. 354, 606 F.2d 1261 (D.C.Cir. 1979), the court of appeals recognized the jurisdiction of a district court to consider the sufficiency of a NEPA evaluation made by the Energy Research and Development Administration.

However, as the court noted in footnote thirteen, the Energy Research and Development Administration is not subject to a special statutory review proceeding as is NRC. Thus, Congress had not divested the district court of jurisdiction over ERDA proceedings as it has in the case of NRC.

6. NRC must decide whether an alteration is involved constituting a change from the technical specifications previously incorporated in the license (10 C.F.R. § 50.54 (n)); whether an "unreviewed safety question," as defined in NRC regulations, is involved (10 C.F.R. § 50.-59(a)); whether a "significant hazards consideration" is involved (10 C.F.R. § 50.91); or whether a "material alteration of a licensed facility" is involved (10 C.F.R. § 50.91).

plaint is dismissed for lack of subject matter jurisdiction, but without prejudice to plaintiffs' right of recourse to the Nuclear Regulatory Commission.