728 F.2d 477
 20 ERC 1601, 14 Envtl. L. Rep. 20,447
 QUIVIRA MINING COMPANY, (formerly Kerr-McGee Nuclear
Corporation), Gulf Oil Corporation and Union
Carbide Corporation, Plaintiffs-Appellants,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Douglas M.
Costle, Defendants-Appellees.
 No. 81-1630.
 United States Court of Appeals,
Tenth Circuit.
 March 2, 1984.
 
 Peter J. Nickles, Covington & Burling, Washington, D.C. (Charles H. Montange, Kenneth E. Carroll, Covington & Burling, Washington, D.C., and G. Stanley Crout, C. Mott Woolley, Bigbee, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, N.M., with him on the brief), for plaintiffs-appellants.
 John L. Wittenborn, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., Donald W. Stever, Nancy B. Firestone, Rosanne Mayer, Attys., Dept. of Justice, Washington, D.C., and Christopher C. Herman, Atty., E.P.A., Washington, D.C., with him on the brief), for defendants-appellees.
 Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants, Quivira Mining Company, Kerr-McGee Nuclear Corporation and other energy related companies, brought an action in the United States District Court for the District of New Mexico in which they challenged an Environmental Protection Agency (E.P.A.) regulation establishing standards for permissible doses of radiation released from uranium fuel cycle operations. 40 C.F.R. Part 190.10(a) (1980). The companies maintained that E.P.A. lacked the authority to promulgate the regulation. They charged that the regulation was improper and exceeded any statutory authority that E.P.A. might have. A declaratory judgment was sought that the statute was invalid and plaintiffs further sought an injunction against its enforcement. However the district court dismissed the action for want of jurisdiction based on the ground that the Atomic Energy Act, 42 U.S.C. Sec. 2239(b) (1976), referred all appeals of such proceedings directly to the court of appeals under the Hobbs Act, 28 U.S.C. Sec. 2342 (1976).
 
 
 2
 An analysis of the statutory history will be of some help. The Atomic Energy Act, 42 U.S.C. Sec. 2011, et seq. (1976 & Supp. V 1981) provided that the Atomic Energy Commission (A.E.C.) had broad authority to regulate and license the nuclear industry. The Act authorized the review in the court of appeals of certain final regulatory and licensing orders. In 1970 President Nixon transferred regulatory authority over environmental standards regarding radioactive materials from the A.E.C. to the E.P.A. under Reorganization Plan Number 3 of 1970, 3 C.F.R. Sec. 1072 (1970), reprinted in 5 U.S.C.A.App. II, at 114 (West Supp.1983), and in 84 Stat. 2086 (1970). No mention was made in the Reorganization Plan of judicial review mechanisms. After this Congress enacted the Energy Reorganization Act of 1974, 42 U.S.C. Sec. 5801, et seq. (1976 & Supp. V 1981). This abolished the A.E.C. and transferred its remaining functions to the Nuclear Regulatory Commission and (N.R.C.) the Energy Research and Development Administration (E.R.D.A.). The E.R.D.A. was recently abolished and Congress vested its functions in the Department of Energy. 42 U.S.C. Sec. 7111 et seq. (Supp. V 1981).
 
 
 3
 The question which is presented is whether the exclusive review provisions for A.E.C. rulemaking, pursuant to 42 U.S.C. Sec. 2239(b), were affected by the reallocation of this function to the E.P.A. under the Reorganization Plan. If we conclude that the provisions were not affected, then the district court was correct in dismissing the action for lack of subject matter jurisdiction.
 
 
 4
 The companies, of course, argue that the reallocation of functions as a part of the Reorganization Plan was invalid and that, even assuming its validity, the Plan failed to continue the exclusive review of rulemaking under the Atomic Energy Act. They argue that the fact that the Reorganization Plan failed to mention exclusive court of appeals review of the transferred functions evinces an intent to allow ordinary review of E.P.A. actions through the district courts. They emphasize the fact that the court of appeals are courts of limited jurisdiction and that statutes mandating exclusive review by the court of appeals must specifically so provide. They point out that Congress passed a subsequent provision for exclusive court of appeals review of N.R.C. orders in the Energy Reorganization Act, 42 U.S.C. Sec. 5871(g). The companies maintain that had Congress thought the Atomic Energy Act provisions would survive reallocation of functions, it would not have specifically mandated court of appeals review of N.R.C. orders. They raise the same argument regarding Congress's specific review provisions for E.P.A. regulations under a 1978 amendment to the Atomic Energy Act, 42 U.S.C. Sec. 2022(c)(2) (Supp. V 1981). The companies also recite recent case law which purports to hold that, in the absence of specific language regarding review of E.R.D.A. orders under the Energy Reorganization Act, such orders are properly reviewed in the district court. Last, the energy companies argue that even if the exclusive review provisions apply to E.P.A. regulations, the district court may retain jurisdiction to hear cases alleging ultra vires E.P.A. activity.
 
 
 5
 The arguments and the authorities referred to by the companies seem persuasive at first. Close inspection of the legislative scheme and the case law, however, supports the trial judge's conclusion that the exclusive review provisions survived and are still in effect. First, we analyze the Atomic Energy Act.
 
 
 6
 I. A HISTORY OF REVIEW UNDER THE ATOMIC ENERGY ACT.
 
 
 7
 When Congress enacted the Atomic Energy Act in 1954, it intended to make the court of appeals the exclusive reviewing tribunal of certain A.E.C. orders. Section 2239 of the Act, which deals with hearings and judicial review, defines the steps the A.E.C. had to follow in promulgating these orders and directs that review of final orders must be in accordance with the Hobbs Act.
 
 
 8
 Section 2239(a) defines the orders which require Hobbs Act review. Subsection (a) includes "any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees." 42 U.S.C. Sec. 2239(a). The challenged regulations, had they been promulgated by the A.E.C., certainly would fit within this definition. The challenged regulation establishes the doses of radiation that nuclear licensees may discharge in the environment, and thus clearly regulates "the activities of licensees." The E.P.A. followed the requisite proceedings for rulemaking. Unquestionably the regulation may affect non-federal licensees as well as federal licensees, but that is irrelevant. Section 2239 of the Atomic Energy Act is not limited to regulations affecting federal licensees exclusively.
 
 
 9
 The regulation is one enumerated in subsection (a) and subsection (b) by its terms refers the regulation's opponents to judicial review pursuant to the Hobbs Act:
 
 
 10
 Any final order entered in any proceeding of the kind specified in subsection (a) above shall be subject to judicial review in the manner prescribed in the (Hobbs Act).
 
 
 11
 42 U.S.C. Sec. 2239(b). The Hobbs Act provides in pertinent part as follows:
 
 
 12
 The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 (4) all final orders of the Atomic Energy Commission made reviewable by section 2239 of Title 42.[1]
 
 
 16
 28 U.S.C. Sec. 2342 (1976 & Supp. V 1981). Unquestionably the instant regulation would be reviewable pursuant to the Hobbs Act if promulgated by the A.E.C. Accordingly, the only remaining question is whether the subsequent Reorganization Plan altered this carefully prepared statutory scheme.II. CONSIDERATION OF THE REORGANIZATION PLAN.
 
 
 17
 Clearly, the President of the United States has only such authority as he or she is granted by the Constitution or by Congressional act. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 585, 72 S.Ct. 863, 865, 96 L.Ed. 1153 (1952). The President's authority to reorganize the functions of the executive agencies derives from the Reorganization Act, 5 U.S.C. 901 et seq. (1982). That Act gives the President broad authority to transfer and modify agency functions when necessary to further enumerated national policies. 5 U.S.C. Sec. 903. The Act contains specific limitations, however, on executive reorganizational authority. Congress specifically stated that a reorganization plan may not "[authorize] an agency to exercise a function which is not expressly authorized by law at the time the plan is transmitted to Congress." 5 U.S.C. Sec. 905(a)(4). Moreover, the Act clearly contemplates the orderly continuity of functions before and after reorganization.
 
 
 18
 A statute enacted, and a regulation or other action made, prescribed, issued, granted, or performed in respect of or by an agency or function affected by a reorganization under this chapter, before the effective date of the reorganization, has, except to the extent rescinded, modified, superseded, or made inapplicable by or under authority of law or by the abolition of a function, the same effect as if the reorganization had not been made.
 
 
 19
 5 U.S.C. Sec. 907(a).
 
 
 20
 A. Was the Reorganization Plan Valid?
 
 
 21
 The Reorganization Plan was designed to pull "together into one agency a variety of research, monitory, standard-setting and enforcement activities now scattered through several departments and agencies." Message of the President, July 9, 1970, reprinted in 5 U.S.C.A.App. II at 119. The Reorganization Plan gave some of A.E.C.'s regulatory authority over environmental standards to the newly created E.P.A. The plan provided:
 
 
 22
 There are hereby transferred to the [E.P.A.] Administrator:
 
 
 23
 (6) The functions of the Atomic Energy Commission under the Atomic Energy Act of 1954, as amended, administered through its Division of Radiation Protection Standards, to the extent that such functions of the Commission consist of establishing generally applicable environmental standards for the protection of the general environment from radioactive material. As used herein, standards mean limits on radiation exposures or levels, or concentrations or quantities of radioactive material, in the general environment outside the boundaries of locations under the control of persons possessing or using radioactive material.
 
 
 24
 Reorganization Plan No. 3 of 1970 Sec. 2(a)(6), 3 C.F.R. Sec. 1072 (1970), reprinted in 5 U.S.C.A.App. II, at 114 (West Supp.1983) and in 84 Stat. 2086 (1970). The function of setting emission standards for radioactive materials to protect the public and the environment was not created by the Plan; this was clearly an A.E.C. function under the Atomic Energy Act. Under the Atomic Energy Act, the A.E.C. had the authority "to establish standards to ... protect health or to minimize danger to life and property." 42 U.S.C. Sec. 2201(b). In view of the fact that the A.E.C. already had the authority to establish standards to protect the environment from radioactive material, there is not any merit to the energy companies' contention that the Reorganization Plan was invalid because it created new functions in violation of the limitations provisions of the Reorganization Act, 5 U.S.C. 905. It cannot be said that the severance of this function from the A.E.C. undermined the Atomic Energy Act's purpose of encouraging atomic energy development. Inasmuch as the transferred functions were already authorized by Congress and the Reorganization Plan was properly introduced, our holding is that it was a valid exercise of executive power under the Reorganization Act.
 
 
 25
 B. Did the Reorganization Plan Affect the Atomic Energy Act Review Provisions?
 
 
 26
 The next problem is the question of review. The energy companies point out that the Reorganization Plan is silent on the question of judicial review of the transferred regulatory functions. From this silence they infer an intent to divest this court of exclusive jurisdiction to review E.P.A. standards under the Atomic Energy Act. This we cannot agree with. This circuit has recognized that repeal of a statute by implication is not favored. See Yellowfish v. City of Stillwater, 691 F.2d 926 (10th Cir.1982). Furthermore, the Reorganization Act itself precludes the energy companies' interpretation.
 
 
 27
 Through the continuity provision in the Reorganization Act, 5 U.S.C. Sec. 907(a), Congress appears to deny that silence in a Reorganization Plan may have the effect of changing existing law. The provision contemplates that absent modification by Presidential Reorganization Plan, "a statute ... has ... the same effect as if the reorganization had not been made." This has been the construction given the statute by the courts, which have read new agencies into the existing statutes to permit the orderly administration of the statutory scheme. See, e.g., United States v. Irick, 497 F.2d 1369, 1372 (5th Cir.1974), cert. denied sub nom Myers v. United States, 420 U.S. 945, 95 S.Ct. 1325, 43 L.Ed.2d 423 (1975). (Section 907 expresses the clear "desire of Congress not to leave a hiatus in existing law when a reorganization has taken place").[2]
 
 
 28
 There is other evidence that Congress did not intend Presidential reorganization plans to change substantive provisions of existing laws. The Reorganization Act plainly provides that a reorganization plan may not create new agency functions. Yet, the energy companies argue that a President may, out of silence, create a new judicial review mechanism under the guise of reorganization. Their argument tortures the plain intent of Congress to limit the President's authority to create new law through reorganization.
 
 
 29
 It is clear, then, that had the A.E.C. promulgated the challenged regulation, review of the regulation would proceed according to the Hobbs Act. The Reorganization Plan did not address this review mechanism. We must refuse to infer a new review provision from the Plan's silence, and we also question whether the Reorganization Act authorizes the President to make such a substantive change.
 
 
 30
 III. IS EXCLUSIVE COURT OF APPEALS REVIEW CONSISTENT WITH THE STATUTORY SCHEME?
 
 
 31
 In seeking a reversal of the district court's dismissal of this action, the energy companies have urged us to strictly construe the individual statutes in question rather than read them all together. The companies contend that section 2239 of the Atomic Energy Act fails to mention E.P.A. regulations, and that section 2342(4) of the Hobbs Act lists the A.E.C. as the sole agency subject to its review provisions. Accordingly, the energy companies ask us to read the statutes literally to exclude court of appeals review of the instant E.P.A. regulation. The companies recite general statutory construction principles in support of their argument. See, e.g., City of Tulsa v. Midland Valley Railroad Co., 168 F.2d 252, 254 (10th Cir.1948) ("enumeration of specific powers operates to exclude those not enumerated"); A.F.L. v. N.L.R.B., 308 U.S. 401, 404, 60 S.Ct. 300, 302, 84 L.Ed. 347 (1940) (court of appeals review "is specially conferred by legislation relating specifically to the determinations of such agencies made subject to review"). We must reject the energy companies' argument. The rules of statutory construction which they propose would frustrate the purpose of the acts in question, and lead to anomalous results. In this case the statutes must be read together to realize the purposes of the legislative scheme. Rocky Mtn. Oil and Gas Ass'n. v. Watt, 696 F.2d 734, 745 (10th Cir.1982) ("A statute must be interpreted to effect its evident purpose and to be consistent with 'evidenced congressional intent' " [citations omitted].
 
 
 32
 The Atomic Energy Act represents an effort to implement a coherent plan for the development and regulation of nuclear energy. See 42 U.S.C. Secs. 2012, 2013. An integral part of this plan is the speedy and final review of agency actions and regulations pursuant to the Atomic Energy Act. See H.R.Rep. No. 2122, 81st Cong., 2d Sess., reprinted in 1950 U.S.Code Cong. & Ad.News 4303, 4306 (court of appeals review was chosen as the "more modern method and ... best method for review of orders of administrative agencies" because of its "simplicity and expedition"). The review mechanism chosen by Congress enables prompt implementation of national nuclear policy by avoiding the delays of multiple litigation and the risk of inconsistent district court decisions. See Lubrizol Corp. v. Train, 547 F.2d 310 (6th Cir.1976). Although the agency charged with promulgating environmental regulations has changed since Congress enacted the Atomic Energy Act, the reasons behind the adoption of special Hobbs Act review provisions remains. Until Congress clearly indicates its intent to alter the coherent energy plan inherent in the Atomic Energy Act, it is not for us to do so by implication, and that is what we are asked to do.
 
 
 33
 The companies rely on subsequent legislation to support the argument that the Reorganization Plan divested the court of appeals of exclusive jurisdiction over appeals of E.P.A. regulations relating to nuclear substances. The argument which they advance is that in the Energy Reorganization Act, which did away with the A.E.C. and transferred its functions to N.R.C. and E.R.D.A., Congress expressly provided that N.R.C. orders are subject to Hobbs Act review. The energy companies maintain that Congress would not have so provided if they had believed that such review was already available. The companies' argument tends to be misleading. They assume, for one thing, that the Congress is mindful of every mistake that has been made. Moreover, nowhere does the review statute mention Hobbs Act review; it merely perpetuates the existing law. It provides:
 
 
 34
 Final orders and actions of any official or component in the performance of functions transferred by this Act shall be subject to judicial review to the same extent and in the same manner as if such orders or actions had been made or taken by the officer, department, agency, or instrumentality in the performance of such functions immediately preceding the effective dates of this Act.
 
 
 35
 42 U.S.C. Sec. 5871(g) (1976). Congress merely stressed that the Atomic Energy Act review provisions survived Congressional reorganization.
 
 
 36
 Specificity in this context is understandable. Presidential reorganization orders are inherently limited and subject to the continuity provision of the enabling Reorganization Act. Congressional reorganization statutes are not. Congress, unlike the President, has the authority to add functions and change substantive provisions. Without the benefit of a continuity provision in enabling legislation, Congress must be more specific about its intentions if continuity is to be achieved. If anything, the cited review provision in the Energy Reorganization Act supports the district court's conclusion that Congress intended consistent review of Atomic Energy Act orders, notwithstanding their source.
 
 
 37
 The companies also point to the absence of any review provisions for E.R.D.A. actions in the Energy Reorganization Act, and cite case law holding that this exclusion allows district court review of E.R.D.A. orders. See, N.R.D.C. v. Administrator, 451 F.Supp. 1245 (D.D.C.1978), aff'd. in pertinent part sub nom N.R.D.C. v. N.R.C., 606 F.2d 1261, 1266 n. 13 (D.C.Cir.1979). They argue that if Congressional silence allows ordinary review of E.R.D.A. orders, the same rule should apply to E.P.A. orders. This does not follow at all.
 
 
 38
 As noted above, Congressional silence and Presidential silence must be treated differently. When Congress remains silent, the courts may be justified in drawing inferences from that silence because Congress has plenary authority to change prior law. The continuity provision of the Reorganization Act fills gaps in Reorganization Plans with existing law, and eliminates the need to speculate on the effect, if any, of Presidential silence. Thus, Congress' silence regarding review of E.R.D.A. orders, even if it is properly construed as a change in the previous review mechanism, is not controlling here.
 
 
 39
 The cases cited by the energy companies are not persuasive in any event. We have already noted that this circuit is reluctant to infer new legislative provisions out of silence. This is especially true when the statutory interpretation is unnecessary to the disposition of the case. The cited cases need not have addressed the jurisdictional issue. In N.R.D.C. v. Administrator, supra, the United States District Court for the District of Columbia held that the challenged E.R.D.A. decision was not an enumerated proceeding under Sec. 2239(a) of the Atomic Energy Act, and therefore was not subject to the review provisions of Sec. 2239(b). In light of this finding, the court did not need to address the question of the proper review of enumerated decisions rendered by E.R.D.A. in place of the A.E.C. The court addressed the question, however, and summarily assumed that the Atomic Energy Act's Sec. 2239(b) review provisions do not apply to E.R.D.A. orders. N.R.D.C. v. Administrator, 451 F.Supp. at 1250. The District of Columbia Circuit affirmed this summary holding in a footnote. N.R.D.C. v. N.R.C., 606 F.2d at 1266 n. 13, cited by Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 485 F.Supp. 81, 87 n. 5 (M.D.Pa.1979), aff'd. in part, rev'd in part, 619 F.2d 231 (3rd Cir.1980), cert. denied, 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981). The cited cases read the Hobbs Act literally and ended the inquiry. They did not explain why N.R.C. orders can be read into the Hobbs Act and E.R.D.A. orders cannot. Moreover, the cases did not examine the obvious statutory inter-relationship in the context of nuclear energy regulation, and failed to consider the legislative purposes underlying the various statutes. It is not, of course, for us to rule on the E.R.D.A. review question because it arose in a different context, but we decline to regard as dispositive of our case the decisions which summarily dispose of an important jurisdictional problem. Obviously it was important to have the court of appeals rule on the present regulation, and we should not do away with the review procedure without some reason besides silence.
 
 
 40
 The companies further argue that to apply the Sec. 2239(b) review provisions to E.P.A. orders renders redundant the Atomic Energy Act provision specifically providing for court of appeals review of E.P.A. standards relating to uranium mill tailings. This argument is not persuasive. First, the provision cited was enacted in 1978 and authorized the EPA to promulgate regulations with reference to the new Uranium Mill Tailings Control Act of 1978, 42 U.S.C. Sec. 7914 (Supp. V 1981). Because this was not a function specifically contemplated in the Atomic Energy Act, new review provisions might be necessary. Second, and more important, the provision cited does not provide for Hobbs Act review. The mechanism differs from that prescribed in the Hobbs Act in several particulars. The specific review provisions for E.P.A. regulations of mill tailings are distinct from the Hobbs Act provisions, and provide no basis for the companies' argument that the Hobbs Act provisions do not apply to the instant E.P.A. regulations.
 
 
 41
 Our conclusion after study of the relevant statutes is that the Reorganization Plan merely transferred regulatory functions, and failed to alter the review procedure for the transferred functions. Our reading of the statutes is supported by the legislation enabling Presidential reorganization. No subsequent statutory enactment conflicts with our reading. Also, our reading comports with the underlying purpose of the Atomic Energy Act. Finally, the companies' interpretation of the law leads to an anomalous result, noted by the trial court, which Congress could not possibly have intended.
 
 
 42
 There is no reason to distinguish between final orders of EPA and of NRC under the Atomic Energy Act for purposes of review and every reason to treat them the same. If I were to hold that EPA orders could be reviewed in this Court, the fact that NRC orders are reviewable only in the court of appeals would lead to a ludicrous result. NRC's own regulations implementing 40 C.F.R. Part 190 (1980) could not be challenged in multiple district courts long after they were promulgated, yet EPA's regulations, upon which the NRC regulations are based, could be. This would mean that NRC's regulations implementing the standards would never be effectively binding or enforceable, a clear thwarting of Congress's purpose.
 
 
 43
 Kerr-McGee Nuclear Corp. v. E.P.A., No. 80-203C (D.N.M., April 28, 1981) Mem.Op. at 8. We will not create this awkward situation in the absence of a clear intent to allow district court review of E.P.A. orders.
 
 
 44
 IV. NEXT WE CONSIDER THE CLAIM THAT EVEN IF THE COURT OF APPEALS HAS JURISDICTION IT IS NOT EXCLUSIVE.
 
 
 45
 Finally, there is a lack of merit in the energy companies' claim that the district court has jurisdiction notwithstanding an exclusive review mechanism. They contend that even if this court has exclusive jurisdiction to review E.P.A. orders under the Atomic Energy Act, the district court retains jurisdiction to hear the case. The companies argue that this case presents an exception to the exclusivity rule because the agency action was beyond the scope of agency authority. They rely on Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), in support of their argument.
 
 
 46
 This argument does not persuade us. Leedom stands for the proposition that ultra vires agency action may be reviewed by the district courts, notwithstanding exclusive court of appeals review provisions, when no relief is otherwise available. In Leedom the challenged action was not a final order and could not be reviewed pursuant to the review provisions. Unless district court review were available, the illegal agency action could not be challenged. Leedom is distinguishable. There is no evidence here that the EPA acted beyond its authority. Moreover, the energy companies had ample opportunity to challenge the regulation. They failed to do so. Now, several years after the time for court of appeals review has elapsed, the companies wish to raise a challenge.
 
 V. CONCLUSORY REMARKS
 
 47
 Finally the energy companies are before the proper court, but it is somewhat late. Had the A.E.C. promulgated this regulation, the energy companies would have had to raise their challenge in the court of appeals within 60 days, as provided by the Hobbs Act. The transfer of the A.E.C.'s regulatory function to the E.P.A. under the Reorganization Plan did not change this review scheme. The district court properly dismissed this case for want of jurisdiction.
 
 
 48
 Accordingly, the judgment is affirmed.
 
 
 
 [1]
 28 U.S.C. Sec. 2344 sets forth the procedure that must be followed in challenging orders reviewable pursuant to the Hobbs Act:
 On the entry of a final order reviewable under this chapter ... the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.
 
 
 [2]
 In Irick, the court held that a criminal statute prohibiting assaults on agents of the Bureau of Narcotics and Dangerous Drugs should be read to prohibit assaults on agents of the newly created Drug Enforcement Administration. Irick is, if anything, a stronger case for a strict reading of the statute, because the statute in Irick gives rise to criminal liability. The Irick court obviously believed that the Reorganization Act is sufficiently clear on the issue of continuity to give notice to criminal defendants of the wrongfulness of their conduct